CF   D.C.
ELECTRONIC

**Mar 24, 2011**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: _____**

18 U.S.C. § 371

# 11-20209-CR-SEITZ/O'SULLIVAN

**UNITED STATES OF AMERICA**

**vs.**

**BARRY MINKOW,**

_____ **Defendant.** ____ /

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1.      **BARRY MINKOW** was a convicted felon who operated the Fraud Discovery Institute, a for profit fraud investigation firm based in or around San Diego, California.

2.      **BARRY MINKOW** had a formal relationship with the Federal Bureau of Investigation as a "confidential human source." In this capacity, **MINKOW** had a duty to protect confidential information disclosed to him by law enforcement officials.

3.      Lennar Corporation ("Lennar") was a Delaware corporation with offices located in Miami-Dade County, in the Southern District of Florida. Lennar was one of the nation's largest homebuilders and a provider of residential financial services.

4.      Lennar was an issuer with common stock registered under Section 12 of the Securities Exchange Act of 1934 or that was required to file reports under section 15(d) of the Securities Exchange Act of 1934.

5.      Conspirator A was a California resident who engaged in real estate transactions and other related business with Lennar.

## CONSPIRACY TO COMMIT
## SECURITIES FRAUD
## (18 U.S.C. § 371)

6.      From in or around late 2008 through in or around March 2009, in Miami-Dade County and Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### BARRY MINKOW,

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with Conspirator A and with others, known and unknown to the United States Attorney, to commit certain offenses against the United States, that is, to knowingly and intentionally execute, and attempt to execute, a scheme and artifice: (i) to defraud any person in connection with any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), that is, Lennar common stock; and (ii) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)), that is, Lennar common stock; in violation of Title 18, United States Code, Section 1348.

## PURPOSE OF THE CONSPIRACY

7.      The purpose of the conspiracy was for the defendant and his conspirators to

2

artificially manipulate and depress Lennar's stock price to induce Lennar to make payments of cash and common stock to Conspirator A and to otherwise unjustly enrich the defendant and his conspirators.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his conspirators sought to accomplish the object and purpose of the conspiracy included, but were not limited to, the following:

8.      Conspirator A publicly asserted that Lennar owed him a substantial sum of money as a result of a failed business deal.

9.      In late 2008, Conspirator A hired **BARRY MINKOW** to induce Lennar to pay Conspirator A the money allegedly owed. According to the shared unlawful plan, **MINKOW** would apply economic pressure on Lennar by, among other things, artificially depressing the price of Lennar's common stock.

10.     Beginning in January 2009, **BARRY MINKOW** used the Internet, press releases, e-mail communications, Youtube.com videos, the mails and other means and instrumentalities of interstate commerce to broadcast false and misleading statements about Lennar. These statements alleged wide-spread improprieties in Lennar's financial reporting and business structure, and attacked the personal character of Lennar's management. **MINKOW** made these false and misleading statements about Lennar and its management with reckless disregard for their truth with the intent of artificially depressing Lennar's stock price.

11.     **BARRY MINKOW** abused his pre-existing relationship with federal law enforcement agencies to report false allegations of criminal conduct purportedly committed by Lennar and its management.

3

12.     Once **BARRY MINKOW** confirmed that his false and misleading report successfully induced a law enforcement agency to open a criminal investigation, **MINKOW** misappropriated that information by trading Lennar securities for his own personal benefit.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to accomplish its object and purpose, **BARRY MINKOW** and others committed, and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1.     On or about January 7, 2009, **BARRY MINKOW** mailed a report alleging fraud at Lennar to federal agents employed with the Federal Bureau of Investigation, the Securities and Exchange Commission, and the Internal Revenue Service.

2.     On or about January 9, 2009, **BARRY MINKOW** posted false and misleading representations alleging widespread fraud at Lennar on the Internet website www.lenn-ron.com.

3.     On or about January 23, 2009, **BARRY MINKOW** posted a Youtube.com video on the Internet comparing Lennar to a "Ponzi scheme," falsely stating that "Lennar is a financial crime in progress..." and accusing individual managers at Lennar of engaging in various forms of misconduct.

4.     On or about March 13, 2009, **BARRY MINKOW** sent an e-mail communication to federal agents employed with the Federal Bureau of Investigation and the Internal Revenue Service confirming that **MINKOW** knew that he was "precluded... from shorting [Lennar] stock."

4

5.      On or about March 16, 2009, **BARRY MINKOW** misappropriated material non-public information entrusted to him by the Federal Bureau of Investigation by purchasing Lennar options contracts in a nominee trading account located in the Southern District of Florida.

All in violation of Title 18, United States Code, Section 371.

_____, Chief, Criminal Division
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
RYAN DWIGHT O'QUINN
ASSISTANT UNITED STATES ATTORNEY

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| BARRY MINKOW, | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Defendant. _____ / | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | | |
|---|---|---|---|
| _X_ Miami | ____ Key West | New Defendant(s) | Yes ____ No ____ |
| ____ FTL | ____ WPB ____ FTP | Number of New Defendants ____ | |
| | | Total number of counts ____ | |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect    _____

4. This case will take    0    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)

   | | | | | |
   |---|---|---|---|---|
   | I | 0 to 5 days | _X_ | Petty | ____ |
   | II | 6 to 10 days | ____ | Minor | ____ |
   | III | 11 to 20 days | ____ | Misdem. | ____ |
   | IV | 21 to 60 days | ____ | Felony | _X_ |
   | V | 61 days and over | ____ | | |

6. Has this case been previously filed in this District Court? (Yes or No)    No
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____    District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    ____ Yes    _X_ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?    ____ Yes    _X_ No

_____
RYAN DWIGHT O'QUINN
ASSISTANT UNITED STATES ATTORNEY
Florida Bar # 513857

*Penalty Sheet(s) attached

REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: BARRY MINKOW**

**Case No:** _____

Count #: 1

Conspiracy to Commit Securities Fraud _____

Title 18, United States Code, Section 371 _____

**\* Max. Penalty**: 5 years' imprisonment _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**