UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 11-20209-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA

vs.

BARRY MINKOW,

        Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("Office") and Barry Minkow (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to a one count Information charging conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371.

2. The defendant is aware that the sentence will be imposed by the Court after considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that

1

sentence. The Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph one (1) and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to five (5) years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a maximum fine of up to $250,000, or not more than the greater of twice the gross gain or gross loss resulting from the offense set forth in paragraph one (1) above.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph three (3) of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid by the time of sentencing.

5. The defendant understands that restitution under Title 18, United States Codes, Section 3663A is mandatory and he agrees that the restitution required as a result of the offense set forth in paragraph one (1) above shall be equal to the amount of any actual victim loss attributable to the defendant's knowing participation in this offense, as determined at sentencing. The defendant agrees that offenses against property listed under Title 18, United States Code, Section 3663A, were committed by him as part of the fraud scheme set forth in paragraph one (1) above, and that those offenses gave rise to this plea agreement. The defendant further agrees, as permitted by Title 18,

2

United States Code, Section 3663A(a)(3), that restitution payable by him shall be payable for the full amount of the actual loss arising from the relevant conduct related to this matter, not just from the offense of conviction.

6. The Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. Although the Office believes that there is no basis for a variance, the defendant may seek or argue for any variance. Although the Office believes that there is no basis for an adjustment, the defendant may seek or argue for an adjustment. Although the Office believes that there is no basis for a departure, the defendant may seek or argue for a departure.

8. This Office agrees that, although not binding on the probation office or the Court, that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be sixteen (16) or greater, the government will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court

to allocate their resources efficiently. The United States, however, will not be required to make this motion or any of the recommendations set forth in this paragraph if the defendant: (a) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (b) is found to have misrepresented facts to the government prior to entering into this plea agreement; or, (c) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9. This Office and the defendant agree, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the count to which the defendant shall plead:

    a. <u>Applicable Guideline Offense and Base Offense Level</u>: The offense guideline applicable to the defendant's offense is Sentencing Guidelines Section 2B1.1(a)(1), which provides for a base offense level of six (6) because the defendant will plead guilty to conspiracy to commit securities fraud, which carries a maximum term of imprisonment of five (5) years.

    b. <u>Specific Offense Characteristics</u>: The parties agree and stipulate that the following offense characteristics apply under Section 2B1.1(b):

(i) <u>Loss</u> - The parties agree that a reasonable estimate of the reasonably foreseeable pecuniary harm that resulted from the offense was greater than

$400,000,000,[1] increasing the offense level by thirty (30) under Section 2B1.1(b)(1)(P);

(ii) <u>Sophisticated Means</u> - The parties agree that the offense involved sophisticated means, increasing the offense level by two (2) under Section 2B1.1(b)(9)(C).

c. <u>Role in the Offense</u>: The parties agree and stipulate that the following role characteristic applies under Section 3B1.3:

(i) <u>Abuse of Position of Trust</u> - The parties agree that the defendant abused a position of public or private trust in a manner that specifically facilitated the commission or concealment of the offense, increasing the offense level by two (2) under Section 3B1.3.

10. This agreement excludes Title 26 offenses, crimes of violence, and any other proceeding which may be pending at the time this agreement is signed. This agreement is also limited to the United States Attorney's Office for the Southern District of Florida and, as such, does not and cannot bind other federal, state, regulatory, or local prosecuting authorities.

11. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation

---

[1] For the limited purpose of the sentencing hearing in this criminal matter, the parties agree that the Office possesses sufficient information to prove that Lennar Corporation suffered a loss of approximately $583,573,600. This estimate of loss approximates the artificial diminution in the value of Lennar Corporation equity securities or other corporate assets during the relevant time period. Defense counsel is expressly authorized to argue that all or a portion of this loss was mitigated after disclosure of the offense conduct for the purposes of determining the appropriate restitution amount under paragraph 5 of this agreement.

5



office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph two (2) above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by both the defendant and this Office.

12. In the event the defendant withdraws from this agreement prior to or after pleading guilty to the charges identified in paragraph one (1) above, or should this Office, in its sole discretion, determine that the defendant has failed to fully comply with any of the terms of this plea agreement, this Office will be released from its obligations under this agreement, and the defendant agrees and understands that: (a) the defendant thereby waives any protection afforded by any proffer letter agreement between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence, (b) that any statements made by the defendant as part of plea discussions, any debriefings or interviews, or in this agreement, whether made prior to or after the execution of this agreement, will be admissible against him without any limitation in any civil or criminal proceeding brought by the government; (c) the defendant's waiver of any defense based on the statute of limitations, including the waiver set forth below in paragraph 13, or any other defense based on the passage of time in filing an indictment or information, referred to herein, shall remain in full force and effect; (d) the defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this agreement, of any documents provided by the defendant or the

defendant's representatives to any state or federal agency and/or this Office; and (e) the defendant further stipulates to the admissibility, in any case brought by the United States in any way related to the facts referred to in this agreement, of the entire factual basis set forth below in paragraph 16, as the defendant's own statement.

13. The defendant hereby knowingly and voluntarily waives any defense based on the statute of limitations or any other defense based on the passage of time in filing an indictment or information against the defendant with respect to any criminal offenses in connection with the defendant's criminal conduct described in paragraph one (1) above.

14. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by this Office in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, or to collaterally attack the conviction pursuant to Title 28, United States Code, Sections 2255, 2254, 2241 or any other applicable provision, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if this Office appeals

7



the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate/collateral attack rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal/collateral attack waiver set forth in this agreement with his attorney. The defendant further agrees, together with this Office, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal or to collaterally attack the conviction or sentence to be imposed in this case was knowing and voluntary.

15. This Office agrees that it will not seek additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement, except that this Office shall have the right in its discretion to seek additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement where any such additional upward specific offense characteristics, enhancements, or upward departures to or from the defendant's offense level would be based on conduct occurring after the defendant enters into this agreement. The defendant agrees that he will be sentenced under the Sentencing Guidelines and will not seek additional downward specific offense characteristics, reductions, variances, or downward departures to or from the defendant's offense level beyond those, if any, specifically referred to in this agreement. However, in the event the probation office recommends any specific offense characteristics, enhancements, reductions, or departures to or from the defendant's offense level other than those, if any, specifically referred to in this agreement, either party shall have the right but not the obligation to oppose any such recommendation.



16. The defendant hereby (i) confirms that he has reviewed the following facts with legal counsel, (ii) adopts the following factual summary as his own statement, (iii) agrees that the following facts are true and correct, and (iv) stipulates that the following facts provide a sufficient factual basis for the plea of guilty in this case, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure:

> From January 2009 through March 2009, Barry Minkow, Conspirator A, and others conspired to execute a scheme and artifice to defraud Lennar Corporation and others in connection with securities issued by Lennar Corporation[3] **and** to obtain, by means of false or fraudulent pretenses, representations, or promises, money or property from Lennar Corporation in connection with the purchase or sale of securities issued by Lennar Corporation.
>
> Prior to the conspiracy described below, Minkow was a convicted felon who previously served a term of incarceration in a federal prison. Following his release from prison, Minkow claimed to be a reformed fraudster whose experience and expertise would allow him to assist law enforcement to find and fight corporate fraud. In this role, Minkow established a formal relationship with one or more federal law enforcement agencies as a "source." As a result of this relationship, Minkow held a position of public or private trust. This position gave Minkow access to material non-public information in the possession of a federal law enforcement agency, the use of which was restricted.
>
> Prior to Minkow's participation in this conspiracy, an individual referred to herein as Conspirator A publicly asserted that Lennar Corporation owed him a substantial sum of money as a result of a failed business deal. When Conspirator A was unsuccessful at obtaining a judgement in a court of law, Conspirator A decided to employ extortionate means to induce Lennar Corporation to pay the demanded sum of money.
>
> On or about July 11, 2008, Conspirator A sent a letter by Federal Express to the Board of Directors of Lennar Corporation in Miami-Dade County in the Southern District of Florida. In this letter,

---

[3] Lennar Corporation is an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934.

9

Conspirator A threatened to "air... dirty little secrets" of individual Lennar Corporation executives if Lennar Corporation failed to capitulate to Conspirator A's demands for money or property. Further, Conspirator A threatened to cause the Securities and Exchange Commission or other agencies of the federal government to "launch an investigation into all of Lennar's business dealings to see if a... pattern of fraud and deceit occurs" unless Lennar Corporation capitulated to Conspirator A's demands.

When Lennar Corporation refused to capitulate to Conspirator A's extortionate demands, Conspirator A hired Minkow to apply economic pressure on Lennar Corporation by artificially depressing the publicly quoted price of Lennar Corporation's capital stock. In return for payment of a substantial fee, Minkow agreed to assist Conspirator A by, among other things, assisting with the execution of Conspirator A's threats to damage the reputation and character of Lennar Corporation and its individual officers.

To induce Lennar Corporation to capitulate to Conspirator A's demands, Minkow created an internet website styled www.lenn-ron.com. On this internet website, Minkow and others made numerous false and misleading statements about the management and operation of Lennar Corporation.

Additionally, Minkow drafted a report alleging widespread fraud at Lennar Corporation. Minkow created this report adopting Conspirator A's false assertions with reckless disregard for their truth. On or about January 7, 2009, Minkow and others sent this report to agents at multiple federal agencies.

Through the internet website, press releases, e-mail communications, one or more youtube.com videos, and other methods of mass-publication, Minkow and others made false and misleading representations to the investing public about Lennar Corporation's financial condition and business structure. Further, Minkow and others made false and misleading statements about the personal character of Lennar Corporation's management, alleging, among other things, that managers used offshore accounts to conceal the proceeds of a fraud.

Minkow and others employed existing relationships with analysts and market participants in the execution of this conspiracy. For instance, Minkow and others informed an analyst that Minkow and others were meeting with 60 Minutes, an investigative news

show, to discuss fraud at Lennar Corporation. Despite the fact that many of Minkow's allegations were unsubstantiated and vague, the scope of the allegations and Minkow's public stature created "headline risk" that materially and fraudulently depressed the value of Lennar Corporation's common stock.

Once it became clear that Minkow's actions were materially impacting Lennar Corporation's stock price, representatives for Conspirator A offered to have Minkow retract his damaging fraud allegations in return for a payment of cash and Lennar Corporation common stock. As evidence of the positive effect of such a retraction, Conspirator A's representatives pointed to the experience of one or more other corporations that were the subject of similar allegations (and a subsequent retraction) by Minkow in recent years.

In March 2009, Minkow further abused his relationship with federal law enforcement agents to obtain and misappropriate material non-public information related to Lennar Corporation. Specifically, Minkow used his relationship with the Federal Bureau of Investigation to obtain specific, material non-public information about the existence of an investigation arising from Minkow's own January 7, 2009 report. Despite the fact that Minkow had a well-known duty to refrain from trading securities based on this information, Minkow transferred funds from a Morgan Stanley trading account to a trading account located in the Southern District of Florida held in a nominee's name. Thereafter, Minkow misappropriated material non-public information for his own personal gain by executing numerous trades in options contracts (SSFs) related to securities issued by Lennar Corporation.

On March 16, 2009, Minkow used a nominee account in the Southern District of Florida to execute multiple trades in Lennar Corporation options contracts. An internal communication at the broker-dealer described Minkow's position as a "risky highly concentrated position in Lennar SSF's... [comprised of] over 150 contracts..."

17. The defendant agrees that he shall cooperate fully with this Office by:

a. providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

11

b. appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office;

c. if requested by this Office, working in an undercover role to contact and negotiate with others suspected and believed to be involved in criminal misconduct, under the supervision of, and in compliance with, law enforcement officers and agents,

d. in providing information and testimony, he will not seek to protect any person or entity through false information or omission, and will not falsely implicate any person or entity.

18. The defendant also agrees that the defendant shall assist this Office in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which the defendant or others her knowledge have accumulated as a result of illegal activities. Such assistance will involve an agreement on defendant's part to the entry of an order enjoining the transfer or encumbrance of assets which may be identified as being subject to forfeiture. Additionally, defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to this Office upon this Office's request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property.

19. The defendant also understands and agrees that he will not commit any further crimes. The defendant further understands that he may be prosecuted for, without limitation, any materially

false statement made at any time during his cooperation with the United States, including under the federal perjury, obstruction of justice, and false statements statutes.

20. In addition, should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and reasonably disclose all information and provide full and complete cooperation, which determinations are within the sole discretion of the United States, this Agreement is voidable at the option of the United States, and the following conditions shall then also apply:

    a. The defendant may be prosecuted for perjury or false statements, if any, committed while testifying pursuant to this Agreement or for obstruction of justice should he commit these offenses during the time in which he is cooperating with law enforcement pursuant to this Agreement;

    b. The United States may use against the defendant his own admissions and statements and the information, books, papers, documents and objects that he himself has furnished in the course of his cooperation with the United States.

21. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Title 18, United States Code, Section 3553(e), Section 5K1.1 of the Sentencing Guidelines, or Rule 35 of the Federal Rules of Criminal Procedure subsequent to sentencing, reflecting that the defendant has provided substantial



assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding on the defendant.

22. The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in this agreement, should the government exercise its discretion to file such a motion.

23. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 3/22/2011    By: _____
RYAN DWIGHT O'QUINN
ASSISTANT UNITED STATES ATTORNEY

Date: _____    By: _____
DONALD RE
ATTORNEY FOR DEFENDANT

Date: 3/22/11    By: _____
ALVIN ENTIN
ATTORNEY FOR DEFENDANT

Date: 3/22/11    By: _____
BARRY MINKOW
DEFENDANT

15