```
                  UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF FLORIDA
                       MIAMI DIVISION
                  Case No. 11-20209-CR-PAS
```

UNITED STATES OF AMERICA              MIAMI, FLORIDA

                                      March 30, 2011
        Versus                        VOLUME I

                                      PAGE 1 TO 50
BARRY MINKOW
                       Defendant


                      CHANGE OF PLEA HEARING
              BEFORE THE HON. PATRICIA A. SEITZ, J.
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:

                       RYAN D. O'QUINN, ESQ.
                       Assistant United States Attorney
                       99 N.E. 4th Street
                       Miami, FL  33132

FOR THE DEFENDANT:

                       ALVIN E. ENTIN, ESQ.
                       Entin & Della Fera
                       110 S.E. 6th Street
                       Suite 1970-110 Tower
                       Fort Lauderdale, FL  33301




REPORTED BY:           DAVID S. EHRLICH, RPR
                       Official Court Reporter
                       Wilkie D. Ferguson, Jr.
                       U. S. Courthouse
                       400 N. Miami, Room 11-4
                       Miami, Florida 33128-1810
                       (305) 523-5537

1           (Court convened at 2:04 p.m.)

2           MS. WEBB:  Case number 11-20209 criminal, United States of

3   America versus Barry Minkow.

4           Counsel, please state your appearances.

5           MR. O'QUINN:  Good afternoon, Your Honor.  Ryan O'Quinn on

6   behalf of the United States.

7           THE COURT:  Mr. O'Quinn.

8           And who is with you, Mr. O'Quinn?

9           MR. O'QUINN:  At counsel table with me is Special Agent

10  Raymond Andjich, of the Federal Bureau of Investigation.  I provided

11  the spelling of his name to the court reporter.

12          THE COURT:  Thank you very much.

13          MR. ENTIN:  Good afternoon, Your Honor.  Alvin Entin on

14  behalf of Barry Minkow.  Mr. Minkow is present.

15          THE COURT:  Mr. Entin, long time no see.

16          MR. ENTIN:  Yes, Your Honor.  Good to see you too.

17          THE COURT:  And good afternoon, Mr. Minkow.

18          Please have a seat everyone.

19          We are here today because I understand, Mr. Minkow, that

20  you would like to enter a guilty plea to Count 1 of the Information

21  that charges you with conspiracy to commit securities fraud.  Am I

22  correct in what you would like to do here today?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  And I am sure as Mr. Entin has told you, I need

25  to ask you a number of questions so I can be satisfied that your

1  decision to plead guilty is a decision that you have thoughtfully

2  considered looking at all of your options, that you understand the

3  consequences of each one of those options, and you are making this

4  decision freely and voluntarily, no one is forcing you to make this

5  decision.

6          THE DEFENDANT:  I am, ma'am.

7          THE COURT:  It's very important that you and I understand

8  each other because I'm going to rely on what you tell me.  So in

9  that regard I need to make sure that if I am not clear will you make

10 sure that I know that you don't understand my question so that I can

11 attempt to make it clearer?

12         THE DEFENDANT:  I will, ma'am.

13         THE COURT:  And it is very important that you do that

14 because later on you will not be able to come back and say, "I

15 didn't understand."  Okay?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  If you need to speak with Mr. Entin at any time

18 I want to encourage you to speak with him.  But it would be helpful

19 to me if you would let me know that you need to speak to him so I

20 can stop my questions and give you two an uninterrupted chance to

21 chat.  So will you let me know if you ever need to speak with him?

22         THE DEFENDANT:  I will, ma'am.

23         THE COURT:  Most importantly, as I said before, I'm going

24 to rely on what you tell me because I can't read your mind.  So I'm

25 going to place you under oath.  It's very important that you

1  understand that once you are under oath if you do not tell me the

2  truth then the government could charge you with perjury, lying under

3  oath, and they could use your statements here against you, and if

4  you were found guilty beyond a reasonable doubt then there would be

5  an additional criminal penalty that would be imposed that would run

6  sequentially to any penalty that I impose in this case.  So do you

7  understand why it is so important that you tell me the truth here

8  today?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  If you would please stand and raise your right

11  hand so Maritza (Courtroom Deputy) can swear you in.

12          BARRY MINKOW, sworn.

13          THE COURT:  Please have a seat.

14          I am looking at the written Plea Agreement that the parties

15  are proceeding on and I see that there is no signature by Donald Re.

16          MR. ENTIN:  That is correct, Your Honor.  Mr. Re is

17  recovering from an illness.  He has not yet filed a formal

18  appearance in the district.  If Your Honor wants me to sign, I am

19  empowered to sign his name.  He will be entering an appearance later

20  prior to sentencing.

21          THE COURT:  As long as that is satisfactory to the

22  government.

23          MR. O'QUINN:  It is, Your Honor.  I spoke directly with Mr.

24  Re.  He has reviewed the Plea Agreement and then provided it to his

25  client, and he communicated to me that he would not be present at

1  the moment that we signed the Plea Agreement because his health

2  condition precluded his travel.  Mr. Entin, however, is quite

3  capable counsel and was present at the time.

4          THE COURT:  And I saw that this was signed on March 22?

5          MR. ENTIN:  Yes, Your Honor.

6          MR. O'QUINN:  Yes, Your Honor.

7          THE COURT:  How is his health now?

8          MR. O'QUINN:  It is a chronic situation, Your Honor, which

9  prevents him from flying from California.

10          THE COURT:  Okay.

11          MR. ENTIN:  He has finished some treatment, Your Honor, for

12  an ailment that he had, and he is not advised to fly or get into

13  congregated places for probably another two to three weeks.

14          THE COURT:  So his illness does not prevent him from

15  talking to Mr. Minkow --

16          MR. ENTIN:  No, Your Honor.

17          THE COURT:  -- or otherwise advising him?

18          MR. ENTIN:  Not at all.

19          THE COURT:  And, Mr. Minkow, do you feel that there has

20  been any impediments in your relationship with Mr. Re?

21          THE DEFENDANT:  No, ma'am.  I talk to him everyday.

22  BY THE COURT:

23  Q.  So let us begin.  If you would please state your full name,

24  your age, and the extent of your formal education.

25  A.  Barry Jay Minkow, M-i-n-k-o-w, 45 years old, and I have a

1  Bachelor's of Science Degree, a Masters of Arts, a Master of

2  Divinity, and an unearned Doctorate Degree I got on June 10, 2010,

3  honorary doctorate, from Southern California Bible College and

4  Seminary.

5  Q.    And when did you get the last one?

6  A.    June 2010.  But it is unearned, ma'am.

7  Q.    Meaning it was simply an honorary degree?

8  A.    Yes.  Doctor of Divinity, yes, ma'am.

9  Q.    And when did you get your Masters in Divinity?

10 A.    I did, ma'am, at Liberty University.

11 Q.    And where is Liberty University?

12 A.    Lynchburg, Virginia.

13 Q.    And when did you get that?

14 A.    1996.

15 Q.    And your Masters of Arts, what subject was that in?

16 A.    Masters of Arts of Religion, the MAR program, and I got it in

17 1993.

18 Q.    And where did you get that?

19 A.    Liberty University.

20 Q.    And your Bachelor of Science Degree?

21 A.    Church Ministries, 1992, Liberty University.

22 Q.    Given all of those degrees, sir, how did you get involved in

23 this?

24 A.    I'm not too wise, ma'am.

25 Q.    Or you need to work on your soul, sir.

1  A.    Yes, ma'am.

2  Q.    Of what country are you a citizen?

3  A.    U.S.

4  Q.    And tell me the type of work that you have done.

5  A.    I was the senior pastor of Communities Bible Church, for 14

6  years.

7  Q.    And where is that located?

8  A.    San Diego, California.

9  Q.    And from what years to what years?

10  A.    March 1, 1997 till a week and-a-half ago when I stepped down

11  after I accepted the plea.

12  Q.    Have you done any other type of work?

13  A.    Yes, ma'am.

14  Q.    What type of work?

15  A.    Fraud Discovery Institute.  I was the co-founder, and it began

16  in 2001.

17  Q.    Have you been able to communicate in a satisfactory fashion

18  with your lawyers Mr. Entin and Mr. Re?

19  A.    Very much so, ma'am.

20  Q.    And I presume you speak with them in English?

21  A.    Yes, ma'am.

22  Q.    Have both counsel been available to speak with you whenever you

23  felt that it was important to do so regarding your case?

24  A.    They have, ma'am.

25  Q.    Have they spent the time with you that you felt was sufficient

1  so that you could discuss your options and the consequences of those

2  options?

3  A.   They have, ma'am.

4  Q.   And have they answered all of your questions to your

5  satisfaction?

6  A.   Yes, ma'am.

7  Q.   Have you recently been treated for any mental illness, drug

8  addiction, or alcohol addiction?

9  A.   No, ma'am.

10 Q.   In the past 24 hours have you had anything to eat or drink that

11 would affect your ability to understand what we are doing here this

12 afternoon?

13 A.   No, ma'am.

14 Q.   So you have not had any prescription medications,

15 nonprescription medications, drugs or alcohol in the last 24 hours?

16 A.   Lipitor and something that -- you know, normal prescriptions

17 from my doctor for migraines.  But nothing that would adversely

18 affect my mental capacity, ma'am.

19         THE COURT:  Mr. Entin and Mr. O'Quinn, do either one of you

20 have any question about defendant's competence to enter into the

21 Plea Agreement and to plead guilty?

22         MR. O'QUINN:  The United States does not, Your Honor.

23         MR. ENTIN:  No, Your Honor, no reason.

24         THE COURT:  And, Mr. Entin, can you give me some sense of

25 the amount of time that you have spent with your client so that I

1  can get a feel for your experience in dealing with him to --

2  A.   Your Honor, I have been handling a parallel civil litigation

3  that has been going on in front of Judge Freeman in the state court

4  here in the Southern District of Florida for the past 15 or 16

5  months.  We have spent on that case, which involves many of the

6  facts and factors that we are discussing here today in the plea

7  probably, Your Honor, in excess of 500 hours.

8           THE COURT:  So based on that you have a true sense of --

9           MR. ENTIN:  Yes, Your Honor.

10          THE COURT:  -- your client.

11 BY THE COURT:

12 Q.   Mr. Minkow, have you had enough time to thoroughly discuss your

13 case, your options, and the consequences from those options with

14 counsel?

15 A.   I have, ma'am.

16 Q.   I would like to go over a number of things with you so that I

17 have a sense that you have at least discussed certain matters.  I

18 don't want to go into the details of those discussions that you have

19 had with counsel because that should remain confidential.  But I

20 need to know whether or not you have talked about the following

21 things:

22           First and foremost, I need to know have you and

23 counsel talked about what the government would have to prove in the

24 way of the types of facts that they would have to prove through

25 witnesses and documents in order to show that there was a conspiracy

1  in which you understood that the goal of the conspiracy, which was

2  to commit securities fraud, and that you decided to take action and

3  to help that conspiracy succeed, have you had a conversation with

4  Mr. Entin about what the government has to prove?

5  A.   With both Mr. Entin and Mr. Re.

6         THE COURT:  And just so the record is clear, Mr. O'Quinn,

7  would you please just outline the elements of a conspiracy to commit

8  securities fraud.

9         MR. O'QUINN:  Yes, Your Honor.  If this matter proceeded to

10 trial the United States would have had to prove that there was a

11 shared and unlawful plan between two or more individuals and that

12 this defendant agreed to participate and further that shared and

13 unlawful plan, that he agreed to join in that shared and unlawful

14 plan.

15        THE COURT:  And the shared and unlawful plan was to commit

16 securities fraud.  And securities fraud means to make a false

17 material statement to another that reasonable people would rely

18 upon, and you don't have to show that there was an actual reliance,

19 and that it pertained to the issuance, the sale of securities.

20        MR. O'QUINN:  Yes, Your Honor.  In this case it is a Title

21 18 securities fraud.  The elements of that are merely a scheme and

22 artifice to defraud in connection with a qualified security, and in

23 this case the qualified security was the common stock Lennar

24 Corporation, which would qualify under Title 18 securities fraud.

25 BY THE COURT:

1   Q.    So was that the type of discussion that you had with your

2   counsel?

3   A.    Yes, ma'am.

4   Q.    And did you see the government's evidence to support that

5   charge?

6   A.    I did, ma'am.

7   Q.    And did you and your counsel carefully go over that evidence to

8   see if there were any weaknesses in the government's case?

9   A.    Multiple times, ma'am.

10  Q.    Did you explain to your counsel the why and the how that you

11  got yourself into this situation?

12  A.    Yes, ma'am.

13  Q.    Did you discuss whether or not you would have a defense to this

14  charge?

15  A.    (Pause) Yes, ma'am.

16  Q.    Have you discussed the advisory Federal Sentencing Guidelines

17  and how they might apply to your case?

18  A.    Yes, ma'am.

19  Q.    I would like to talk to you about the sentence and about the

20  guidelines.  Are you aware today I do not know what your sentence

21  will be because I must first have a Presentence Investigation Report

22  prepared?

23  A.    Yes, ma'am.

24  Q.    And are you aware that when I decide the sentence I must

25  consider the advisory Federal Sentencing Guidelines, that's my

1  initial guide?

2  A.   I am, ma'am.

3  Q.   And are you aware that at sentencing what I do is I calculate

4  the appropriate guideline range by looking first at the base offense

5  number for the crime, I then look at any other specific offense

6  characteristics associated with that crime, and that usually in this

7  type of case would be driven by the amount of loss or the intended

8  loss, and that always makes the base offense number go up; I look at

9  your role in the offense, that can make the offense level number go

10 up, it can make it come down, it can make nothing happen, it all

11 depends on what the facts are; I look at any other special

12 adjustments that might apply; I look at your eligibility of

13 acceptance of responsibility.  That always brings it down three

14 points.  And then I look at your criminal history.  Are you aware

15 those are the things that I look at in determining the guideline

16 range?

17 A.   I am, ma'am.

18 Q.   Are you aware that even after I determine the appropriate

19 guideline range I must also consider possible upward and downward

20 departures under the Sentencing Guidelines and the statutory

21 sentencing factors under Title 18 United States Code, Section

22 3553(a)?

23 A.   Yes, ma'am.

24 Q.   And the reason why I ask you if you are aware of that and have

25 you discussed that with counsel is I need to know are you aware that

1 the sentence that I impose could be greater than the guideline range

2 that I determine?

3 A.   Absolutely.  Yes, ma'am.

4 Q.   And are you aware, as I said, that I have to have a Presentence

5 Investigation Report prepared before sentencing --

6 A.   Yes.

7 Q.   -- and I must give you and the government an opportunity to

8 challenge any of the statements or the calculations in that

9 Presentence Investigation Report; are you aware of that procedure?

10 A.   Yes, ma'am.

11 Q.   Are you aware that the sentence that I ultimately impose may be

12 different from any estimate that your lawyers have told you, the

13 government has told you, or for that matter anyone else has

14 suggested to you; are you aware of that fact?

15 A.   I am, ma'am.

16 Q.   So do you understand you cannot rely on any estimate that you

17 have heard as to what your sentence will be?

18 A.   Yes, ma'am.

19 Q.   I have in the Plea Agreement --

20        (Off-the-record discussion between the defendant and

21 his counsel.)

22        -- I believe it's at page 16 of the Plea Agreement --

23        THE COURT:  I presume there have been no changes in the

24 Plea Agreement since I was given a draft copy?

25        MR. O'QUINN:  Your Honor, I don't believe so.  The final

1  page of the Plea Agreement I believe is page 15, however.  You may

2  be talking about paragraph 16.

3          THE COURT:  Did I misspeak?  I may.

4          It is paragraph 16.  Thank you.

5  Q.   Turning to paragraph 16, which is on page 9 of the Plea

6  Agreement, and going through to page 11, that is the factual

7  proffer, am I correct in what I have read in paragraph 16 of the

8  Plea Agreement?

9  A.   Yes, ma'am.

10 Q.   And have you carefully gone over each one of the subparagraphs

11 in paragraph 16?

12 A.   I have, ma'am.

13         THE COURT:  I count 12 single-spaced subparagraphs.  Is

14 that what you all count?

15         MR. ENTIN:  That's correct, Judge.

16         MR. O'QUINN:  Yes, Your Honor.

17 Q.   Did you discuss those 12 subparagraphs with your counsel before

18 you signed the Plea Agreement?

19 A.   Yes.  With Mr. Re and Mr. Entin.

20 Q.   And does that factual proffer accurately describe what you did

21 in this case?

22 A.   Yes, ma'am.

23 Q.   Are there any changes, corrections, additions or subtractions

24 you would like to make to this factual proffer?

25 A.   No, ma'am.

1  Q.    Now is the time to tell me if there are.

2  A.    No, ma'am.

3  Q.    So may I rely on this factual proffer as a true description of

4  what you did in this case?

5  A.    Unfortunately yes, ma'am.

6  Q.    Okay.

7            And let me just make the record clear.  I have the

8  written Plea Agreement here in front of me and it is a 15-page

9  document, and I see on the last page across from the date of March

10 22, 2011 on the signature line immediately above your typed name is

11 what appears to be a signature in blue ink.  Is that your signature,

12 sir?

13 A.    It is my birthday.  Yeah, I remember.

14 Q.    And before you signed the Plea Agreement, did you carefully

15 read over each one of the 23 paragraphs in the Plea Agreement?

16 A.    My wife and myself did, yes, ma'am.

17 Q.    And did you read it over with your counsel as well?

18 A.    Mr. Re and Mr. Entin, yes, ma'am.

19 Q.    And did you discuss what each paragraph said and how it would

20 impact your life?

21 A.    Yes, ma'am.

22 Q.    Do you feel that you understand the terms of the Plea

23 Agreement?

24 A.    I do, ma'am.

25 Q.    And you have had ample opportunity to make sure you understand

1  the terms of the Plea Agreement?

2  A.   I have, ma'am.

3  Q.   Does this Plea Agreement represent the entire understanding

4  that you have with the government?

5  A.   It does, ma'am.

6  Q.   By signing this Plea Agreement, are you telling me you accept

7  the terms of the Plea Agreement and agree to be bound by them?

8  A.   I am, ma'am.

9  Q.   Okay.

10          After having discussions with your counsel about what

11 the government must prove and prove beyond a reasonable doubt before

12 you could be found guilty of this charge, after going over the

13 evidence to see if there were any weaknesses in the government's

14 case against you, after discussing whether or not you would have any

15 defenses to the charge, after going over the advisory Sentencing

16 Guidelines and seeing how that might apply to your case,

17 understanding of course you cannot rely on any estimate that you

18 have heard as to what your sentence would be, and after going over

19 the factual proffer contained in the Plea Agreement, do you have any

20 reservation in your mind as to your guilt of this charge?

21 A.   None, ma'am.

22 Q.   Because now is the time to tell me if you have any question in

23 your mind.

24 A.   I wish I did, ma'am.  None.

25 Q.   I would like to talk to you about your Plea Agreement, because

1  as I reviewed it I see that there are a number of paragraphs that

2  are merely recommendations to the Court.  And what that means is

3  that the Court is not bound by those recommendations, meaning if I

4  reject the recommendations I could impose a more-severe sentence and

5  you would not be able to withdraw your guilty plea.  Do you

6  understand the impact of particular provisions in your Plea

7  Agreement that are merely recommendations?

8  A.    I do, ma'am.

9  Q.    Let's just go over some of them so that I make sure and I have

10  heard from you that you have discussed this with counsel.

11          THE COURT:  And since it is such an extensive Plea

12  Agreement, I may need counsel to make sure that I've covered all of

13  the recommendations, I will go over some of the other provisions of

14  it, for example like the restitution provision, because I noticed in

15  the Plea Agreement it did not give me a hint as to what the amount

16  of potential restitution will be, understanding right now it's just

17  an estimate, but I think that it's very important that I discuss

18  with the defendant that he knows what the potential exposure is

19  since the restitution is mandatory in this case, and things like

20  that, okay?

21          So let's look at the first one.  The paragraphs that

22  are recommendations --

23          THE COURT:  Oh.  And I needed to ask the parties.  There

24  seemed to be a conflict between paragraph number 7 and paragraph 15.

25  Paragraph 7 is that the defendant may seek or argue for a departure,

1   or an adjustment, or a variance.  But if you look at paragraph 15 it

2   provides the defendant agrees that it will not seek additional

3   downward specific offense characteristics, reductions, variances, or

4   downward departures from the defendant's offense level beyond those,

5   if any, specifically referred to in this agreement.

6        MR. O'QUINN:  That's correct, Your Honor.  While it perhaps

7   could be more artfully drafted, the last bit of that paragraph 15

8   sentence notes that it specifically referenced in this agreement

9   that they would be allowed.

10        Paragraph 7 constitutes a specific reference.  And what it

11  intends to convey is that the United States does not believe that

12  there is a basis for a variance and we will oppose any argument for

13  a variance.  However, it does afford defense counsel the opportunity

14  to make an argument before the Court and let the Court decide.  But

15  the United States in this case does not believe that there is a

16  basis for a variance.

17        THE COURT:  Then how can the defendant in paragraph 15

18  agree that he will not seek additional downward specific offense

19  characteristics, reductions, variances or downward departures?

20        MR. O'QUINN:  Other than provided specifically in the

21  agreement.

22        So while I --

23        THE COURT:  Okay.  I understand.  I understand.

24        MR. O'QUINN:  I think it could be better drafted, Your

25  Honor, but I don't believe technically they are in conflict.

1        THE COURT:  Okay.

2  Q.   The first recommendation then, other than that one which I

3  think is resolved for me, is paragraph 8, which is the downward

4  adjustment for the acceptance of responsibility.

5            The next recommendations are in paragraph 9, that the

6  base offense level would be a level 6 which carries a maximum term

7  of imprisonment of five years, but that the loss characteristic

8  would be greater than $400 million.  So it sounds to me like the

9  guidelines are going to produce a guideline range significantly

10 greater than the maximum sentence.

11       MR. ENTIN:  That is correct, Your Honor.

12       THE COURT:  So is that part of the agreement since this is

13 an Information as to how he would be charged?

14       MR. O'QUINN:  Your Honor, the United States will be seeking

15 a five-year sentence in connection with this matter.

16       THE COURT:  But just looking at the amount of loss

17 involved, I would imagine that this would be scoring out close to a

18 level 40.

19       MR. ENTIN:  It may, Judge.  But --

20       THE COURT:  But the bottom line is that the guideline range

21 would produce a much more severe sentence than five years.

22       MR. ENTIN:  Than the statutory maximum, correct.  But we

23 still reserve our rights to talk to the Court about things like role

24 in the offense, and how much of the loss is really attributable to

25 this defendant, and this defendant's acts, and what the 3553(a)

1  factors would be appropriate to in this case.  And that's what is

2  really referred to in paragraph 7 as the matters that we want to

3  reserve the right to talk about at sentencing as well.

4          MR. O'QUINN:  Would you like me to address that further,

5  Your Honor?

6          THE COURT:  I think it's okay at this point.

7          There is also the provision for a two-level enhancement for

8  abuse of position of trust, and there is also a two-level

9  enhancement for sophisticated means.

10          MR. ENTIN:  That's correct.

11          THE COURT:  Have I covered all of the recommendations?

12          MR. O'QUINN:  You have, Your Honor.

13          THE COURT:  I am just interested in the recommendations.

14          MR. O'QUINN:  Yes, Your Honor, you have.

15          THE COURT:  Mr. O'Quinn, what were you getting ready to

16  say?

17          MR. O'QUINN:  I would just like to clarify one thing for

18  the record, Your Honor, to make sure the government's position is

19  clear, and that is that in the facts of this case what is alleged is

20  that Mr. Minkow used relationships with federal agencies, with

21  market participants, and with news organizations, to broadcast false

22  and misleading statements about a Fortune 500 company in connection

23  with an attempt to create economic pressure on that Fortune 500

24  company so that it would make payments to a coconspirator that were

25  being demanded by the coconspirator.

1           The appropriate loss figure in this case relates to the

2    damage caused by the false and misleading statements, and in this

3    case that would be the diminution of value of that Fortune 500

4    company's stock.

5           In this case, the United States believes that that loss is

6    approximately $583 million.  However, a sentencing in this case

7    would require us to present significant evidence related to loss

8    causation.  We believe that we would satisfy that burden with

9    forensic analysis in part provided by the corporation victimized by

10   this defendant's conduct.

11          However, in conjunction with the plea, the defense has

12   agreed that the loss is in excess of $400 million and has agreed

13   that our evidence is substantial enough to meet the requirements of

14   a sentencing hearing.

15          I wanted to make sure it was clear that the United States'

16   position is that the defendant's conduct did in fact cause greater

17   than $400 million in loss in this case.  That is something the

18   defense may reserve the right to discuss in connection with

19   restitution, restitution alone.  But it is agreed in the context of

20   this Plea Agreement that the loss figure that we are jointly

21   recommending to this Court be greater than $400 million.

22          THE COURT:  Okay.

23          MR. ENTIN:  That's correct.

24          THE COURT:  Okay.

25           (Pause.)

1  BY THE COURT:

2  Q.    Has anyone made any promise to you, Mr. Minkow, that is not in

3  the Plea Agreement that has persuaded you to accept the Plea

4  Agreement and to plead guilty?

5  A.    No, ma'am.

6  Q.    Has anyone threatened you in any way, or coerced you, or forced

7  you to enter into this Plea Agreement and to plead guilty?

8  A.    No, ma'am.

9  Q.    Are you satisfied with the legal advice and the representation

10  that Mr. Entin and Mr. Re have given you in this case?

11  A.    More than satisfied, ma'am, yes.

12  Q.    So let me just ask it a different way.  Think back to the

13  beginning of your relationship with both.  Is there anything you

14  would have liked them to do differently on your behalf?

15  A.    No, ma'am.

16  Q.    Did counsel explain you do not have to plead guilty, you have

17  another option, you have the right to a trial?  Did they explain

18  that?

19  A.    They did, ma'am.

20  Q.    And did they explain that even here today, even though you have

21  told me you want to plead guilty, you understand that you can change

22  your mind and before I ask you at the end of the hearing how you

23  plead, do you understand you can say, "I've changed my mind.  I

24  would rather go to trial"?

25  A.    I do understand that.  I don't want to, ma'am.

1  Q.    Did counsel explain that if you went to trial you come into the

2  courtroom with a presumption of innocence?  That means you have the

3  right to a good name.  The burden is on the government to prove the

4  charge and to prove it beyond a reasonable doubt.  You don't have to

5  do anything.  You and Mr. Re and Mr. Entin can take a nap as far as

6  you are concerned because the burden is solely on the government.

7  And I tell the jury that if the government fails to prove the charge

8  beyond a reasonable doubt, then under the law they must give you the

9  benefit of the doubt and find you not guilty and you would walk out

10  of this courtroom a free man.  Do you understand the concept of

11  presumption of innocence, how the burden is on the government to

12  prove the charge, that you have no burden, and how that presumption

13  works in this case?

14  A.    I do, ma'am.  I just didn't want to waste the Court's time when

15  I was guilty.  I just thought I would end it quickly.

16  Q.    Okay.  Just bear with me because I need to make sure that you

17  understand all of the rights that you have as part of a trial.

18  A.    I do, ma'am.

19  Q.    Did counsel explain --

20        THE COURT:  I presume, Mr. Entin, you are not CJA in this

21  case?

22        MR. ENTIN:  No, Your Honor, I am not.

23        THE COURT:  And Mr. Re?

24        MR. ENTIN:  Mr. Re certainly is not.

25  Q.    So, Mr. Minkow, did counsel explain that at the trial you have

1 the right to have a lawyer represent you and if you cannot afford

2 the lawyer during trial the Court appoints a lawyer and arranges for

3 payment of counsel; are you aware of that right?

4 A.   I am, ma'am.

5 Q.   Are you aware that at the time of trial you have a number of

6 rights?  You have the right to see, to hear and have your lawyer

7 cross-examine all of the government's witnesses, you have the right

8 to decide whether you want to be a witness in your own defense, the

9 government cannot make you testify, you're the one who decides

10 whether or not you want to testify, you also have the right to call

11 witnesses to testify on your behalf, and if there are witnesses who

12 are reluctant to come to testify all you have to do is ask and I

13 would send the U.S. Marshals out to bring those witnesses in.  Are

14 you aware you have those rights as part of a trial?

15 A.   I am, ma'am.

16 Q.   And are you aware that if you decided you didn't want to

17 testify or you didn't want to put on a defense I would not let the

18 government argue you were trying to hide something, and I would tell

19 the jury, in fact I would give them an instruction, and they take an

20 oath to follow that instruction, and the instruction would be that

21 they cannot use the fact that you decided not to testify or not to

22 put on a defense in any way in their deliberations; are you aware

23 you have those protections as part of a trial?

24 A.   Yes, ma'am.

25 Q.   Are you aware that there are times that the government is not

1 able to prove a case beyond a reasonable doubt and that juries do

2 return verdicts of not guilty; are you aware that that happens?

3 A.   I am, ma'am.

4 Q.   So are you aware that by giving up your right to a jury trial

5 you are giving up the possibility for whatever reason the jury would

6 decide to find you not guilty; are you aware you are giving that up?

7 A.   I am, ma'am.

8 Q.   Do you understand that by pleading guilty you also give up your

9 right under the Fifth Amendment of the Constitution to not

10 incriminate yourself, because at the end of this hearing I'm going

11 to ask you what you did and you're going to have to admit your guilt

12 to me; do you understand that?

13 A.   Yes, ma'am.

14 Q.   So do you understand that if you plead guilty and I accept your

15 guilty plea in accordance with this written Plea Agreement you give

16 up the right to a trial and all of these other rights we have just

17 gone over because we will not have a trial; do you understand that?

18 A.   Yes, ma'am.

19 Q.   Did counsel explain to you the consequences of pleading guilty

20 to the felony that is charged in this case?

21 A.   Yes, ma'am.

22 Q.   So you understand the Court has the power to impose a term of

23 imprisonment of up to five years in jail and that any term of

24 imprisonment would be followed by a term of supervised release of at

25 least three years, and that if you violated any of the terms of

1  supervised release you could be given additional time in prison?

2  A.   Yes, ma'am.

3  Q.   Are you aware that there are other penalties in addition to

4  incarceration?  The Court can impose a fine of a minimum of $250,000

5  or the greater of twice the gross gain or loss resulting from the

6  offense; are you aware of that financial exposure?

7  A.   I'm aware there is restitution, yes, ma'am.

8  Q.   There can be a fine in addition to restitution is what I'm

9  saying.

10  A.   Yes, ma'am.  Yeah, I am.

11  Q.   And are you aware that there is a mandatory restitution under

12  3663(A)?

13  A.   Yes, ma'am.

14         THE COURT:  How much is the restitution, Mr. O'Quinn?

15          (Off-the-record discussion between counsel).

16         MR. ENTIN:  We have agreed on at least 400, Your Honor.

17         THE COURT:  $400?

18         MR. ENTIN:  $400 million is the figure we have agreed upon.

19  It could be more.  Mr. O'Quinn suggests it could be as high as 583.

20         MR. O'QUINN:  Yes.  Your Honor, the issue is that the

21  restitution -- the victimization in this case was the artificial

22  diminution of value of stock.  The argument that defense I believe

23  would like to make, and I don't want to try to make their argument

24  for them, is that the revelation of the fact that the statements are

25  false and misleading may have a restorative effect on the value of

1  the stock and may affect the ultimate restitution number.  So in

2  this case I believe there will be a substantial restitution figure,

3  but that figure has not yet been determined.

4          THE COURT:  Okay.

5  EXAMINATION BY

6  THE COURT:

7  Q.   So you are aware there will be a mandatory restitution imposed?

8  A.   Yes, ma'am.

9  Q.   And that --

10          THE COURT:  Let's talk worst-case scenario.

11          MR. O'QUINN:  Yes, Your Honor.  The restitution in this

12  case could be as high as $583,573,600.

13  EXAMINATION BY

14  THE COURT:

15  Q.   So do you realize you could be spending the rest of your mortal

16  life paying that off?

17  A.   I am.

18  Q.   Are you also aware on top of all of those penalties there is a

19  $100 special assessment that must be paid at the time of sentencing?

20  A.   I wasn't aware -- Yes, ma'am, that's fine.  I'm aware of that.

21  Q.   That is Congress's desire that we have that special assessment.

22          Did counsel explain to you that in the federal system

23  parole has been abolished?  So if I impose a term of imprisonment

24  you have to serve at least 85 percent of your sentence, the maximum

25  reduction for good behavior is 15 percent?

1  A.   Yes, ma'am.

2  Q.   Are you aware that there are other impacts from pleading

3  guilty, because once you plead guilty and I accept your guilty plea

4  you are a convicted felon in the eyes of the law, and as a convicted

5  felon who is a citizen of the United States you lose the right to

6  vote, to hold public office, to serve on a jury and to possess a

7  firearm.  Are you aware of those facts?

8  A.   Yes, ma'am.

9  Q.   Most importantly, are you aware that you will not be able to

10 withdraw your guilty plea just because you are unhappy with the

11 sentence that I impose even though you don't know what the sentence

12 is going to be?

13 A.   Yes, ma'am.

14 Q.   Are you aware that under some circumstances you or the

15 government would have the right to appeal the sentence that I

16 impose; are you aware of that fact?

17 A.   No.  We waived that, I think.  We waived that.

18 Q.   I want to make sure that you understand that there is that

19 right out there.

20 A.   Oh, yes, ma'am.

21 Q.   I'm going to talk to you about the waiver of that right.

22        MR. O'QUINN:  I'm sorry, Your Honor.  Counsel and I were

23 whispering to each other.  I apologize for interrupting.

24 A.   I am aware of that.

25 Q.   And I believe it is in paragraph 14 of the Plea Agreement.

```
 1          THE COURT:  Does somebody have their cell phone on on
 2  vibrate or something like that?  I'm hearing a buzz.  And if I can
 3  hear a buzz, it must be driving Mr. Ehrlich crazy.
 4  Q.  Paragraph 14 of the Plea Agreement limits your right to appeal
 5  the sentence, including any restitution order.  Are you aware of
 6  that?
 7  A.  I am, ma'am.
 8  Q.  It also precludes you from collaterally attacking the sentence
 9  under 2255 --
10          THE COURT:  Is there a state conviction?
11          MR. O'QUINN:  No, Your Honor.  I believe that is an
12  inclusive waiver.  But those two provisions would not be applicable
13  in this case.
14          THE COURT:  Well, the 2255 would be.
15          MR. O'QUINN:  Yes, Your Honor.  2254 and 2241 I believe.
16          THE COURT:  2241 is a challenge as to his terms of
17  incarceration.
18          MR. O'QUINN:  You are correct, Your Honor.  I apologize.
19  Q.  And that is an addition to this waiver of a right to appeal,
20  because basically what this provision in paragraph 14 says is -- the
21  bottom line of it in simple English is, "Judge, whatever sentence
22  you give me, as long as it's not greater than the law allows or I do
23  not upward depart, I'm going to tell you, 'Thank you very much.'"
24  Do you understand that that's the impact of paragraph 14?
25  A.   Yeah.  I'm good with that, ma'am, yes.
```

1  Q.    Do you understand though that judges are human beings, all

2  human beings can make mistakes; I can make the mistake in the

3  calculation of the guidelines?

4  A.    Yeah.

5  Q.    And you would not be able to appeal that fact under this

6  appellate waiver; are you aware of that?

7  A.    Yes, ma'am.

8  Q.    Have you talked to Mr. Entin and Mr. Re about the pros and the

9  cons of waiving your right to appeal?

10  A.    We have, ma'am.

11  Q.    I don't know Mr. Re, but I do know Mr. Entin, and Mr. Entin is

12  a very experienced lawyer, and he has a very extensive career of

13  heavy clients.

14  A.    He's expensive, ma'am.

15  Q.    Well, you get what you pay for.

16  A.    Amen.

17  Q.    And I'm sure that he has given you the benefits of his many

18  years of education and experience.  But it's your life.  You don't

19  have to take his advice.  Do you understand that?

20  A.    I do, ma'am.

21  Q.    So I need to know, is it your decision, one that you are

22  personally making, to waive your right to appeal?

23  A.    It is.

24  Q.    Do you feel that you are fully informed and able to make that

25  decision?

1  A.    I am.  And it's because I'm guilty.  So that's why.

2  Q.    Are you comfortable -- because this affects your sentence.  Are

3  you comfortable with the decision to waive your right to appeal the

4  sentence?

5  A.    Yes, ma'am.

6  Q.    Having discussed with you your rights to a trial, having

7  discussed with you all of the rights that go along with a trial,

8  having discussed with you the maximum sentence of five years that

9  the Court can impose, having discussed with you your civil rights

10  that will be affected by this plea, and having discussed with you

11  your right to appeal, which you have persuaded me you are freely and

12  voluntarily waiving, do you still want to plead guilty in this case?

13          MR. ENTIN:  Judge, prior to inquiring there, there is in

14  paragraph 17 the language which indicates that my client is

15  cooperating with the government, and I know that Your Honor

16  generally inquires over cooperation paragraphs as well as the

17  potential of the 5K.1 or Rule 35.

18          THE COURT:  Let me do that.

19          And I also see in paragraph 18 there is a forfeiture

20  provision, and I need to address both of those things.

21          MR. ENTIN:  Yes, Your Honor.  I apologize for interrupting.

22          THE COURT:  No.  I rely on counsel to make sure I cross the

23  T's and dot the I's.

24          Let me take care of the forfeiture provision first.

25  EXAMINATION BY

1  THE COURT:

2  Q.   I saw in paragraph 18 of the Plea Agreement that the defendant

3  has agreed to a forfeiture of the right, title, and interest of all

4  assets that he has acquired as a result of the illegal activities.

5  Is there anything that is particularly identified?

6         MR. O'QUINN:  There are no identified assets, Your Honor.

7         THE COURT:  Does the government plan on identifying any

8  assets?

9         MR. ENTIN:  I think through the process of cooperation

10 those assets, Your Honor, will be identified and we should know what

11 they are at or about the time of sentencing.

12        THE COURT:  Okay.

13 Q.   So let me go over that with you, Mr. Minkow.  Do you understand

14 that in paragraph 18 you've agreed to turn over all of that property

15 to the government?

16 A.   I did, ma'am.

17 Q.   And ordinarily, though, the government cannot take property

18 without due process.  And in this case that would mean that you

19 would have a right to a trial, the government would have to prove

20 it's entitlement that these were assets that were either used or

21 obtained from the fraud --

22             (Off-the-record discussion between the defendant and

23 his counsel.)

24             -- and they would have to prove it by the greater

25 weight of the evidence.  It's a lesser standard than beyond a

1 reasonable doubt, but they would still have to persuade a jury of

2 that ordinarily, and by this paragraph 18 you are giving up that

3 right to a trial.

4 A.   I am, ma'am.

5 Q.   And you are also giving up the defense that this is an

6 excessive fine under the Eighth Amendment.  Do you realize you are

7 giving that up as well?

8 A.   I am, ma'am.

9 Q.   And you are committing to literally sign whatever you have to

10 sign to turn all of those assets over to the government?

11 A.   Yes, ma'am.

12 Q.   And you're comfortable with that?

13 A.   I am, ma'am.

14 Q.   Okay.

15            Let us talk about the other issue that Mr. Entin

16 reminded me of.  That was the one recommendation issue that we

17 probably should have talked about back when we were talking about

18 recommendations.

19            Paragraph 17 of the Plea Agreement provides that --

20            THE COURT:  And where is the paragraph as to the

21 government's --

22            Paragraph 21.

23 Q.   Paragraphs 17 and 21 pertain to cooperation.  You agree to

24 cooperate with the government by providing truthful and complete

25 information and testimony, appearing at Grand Jury proceedings,

1  hearings and trials, and if requested to work in an undercover role?

2           MR. ENTIN:  That probably is not going to happen, Judge.

3           THE COURT:  So this is just --

4           MR. O'QUINN:  Your Honor, some of this is form language

5  that is included when we give a defendant the opportunity to

6  cooperate.  It does not of course indicate whether or not their

7  attempts to cooperate constitute substantial assistance.

8           THE COURT:  And given the history that is outlined in this

9  factual proffer the government is interested in entering into a

10  cooperation agreement?

11          MR. O'QUINN:  Your Honor, we have not agreed to give any

12  benefit.  We've agreed to allow him to attempt to cooperate.

13  However, the quantity and quality of that information is subject to

14  our office's review and discretion.

15          THE COURT:  I mean:  Burn me once, shame on you.  Burn me

16  twice, shame on me.  I mean, why is the government even considering

17  a cooperation agreement?  I mean, that's not my job.  I don't get

18  involved in Plea Agreements.  But --

19          MR. ENTIN:  Judge, with all due respect, I think there are

20  some underlying facts that Your Honor may be unaware of which

21  mitigate some of my client's conduct; not excuse it, not make it go

22  away, but mitigate some of his conduct.  And in terms of his

23  cooperation I can assure the Court that it's real, it's substantial,

24  it is corroboratable, and we have already turned over thousands of

25  pages of documents to the government Bates stamped and in support of

1 the information that we have already given.

2         So it's not just a question of buying what Mr. Minkow says.

3 It's a question of we are turning over the documents that support

4 very clearly a circumstance where we believe, Your Honor, that

5 Mr. Minkow was deluded by the coconspirator in this case, taken

6 advantage of.  That he acted recklessly we don't dispute at all.

7 But there is significant information that is going to the government

8 prior to the time of ever coming here, Your Honor.

9         THE COURT:  Okay.

10 Q.   And you have agreed to cooperate and the government has agreed

11 to give you the opportunity to cooperate in paragraph 17.

12         And in paragraph 21, the government, however, provides

13 that it has the sole discretion to evaluate the quality and the

14 quantity of that cooperation, and in its sole judgment if it

15 determines that it is substantial assistance then the government

16 will file a 5K1.1 motion to reduce your sentence exposure prior to

17 the time of sentencing, or a Rule 35 motion after the sentencing.

18 But I would like to talk to you about those provisions.

19         Do you understand that even though you do everything

20 humanly possible to cooperate, there is nothing that you, Mr. Entin,

21 Mr. Re, or I can do to force the government to file a motion to

22 reduce your sentence?

23 A.   I'm aware of that, ma'am.

24 Q.   Let me also share with you though, even if you do everything in

25 your human power and Mr. O'Quinn believes that you have been the

1  best cooperating defendant he has ever worked for and files a motion

2  to reduce your sentence, do you understand that if I -- once I look

3  at all of the facts, if I don't agree with it I don't have to grant

4  the motion, or if I grant the motion I don't have to grant it to the

5  extent requested?  Are you aware of that fact?

6  A.   I am, ma'am.

7        THE COURT:  Have I covered all of the recommendations in

8  the Plea Agreement and anything else that we need to cover in the

9  Plea Agreement?

10       MR. O'QUINN:  I believe you have, Your Honor.

11       THE COURT:  Mr. Entin?

12       MR. ENTIN:  Yes, Your Honor.

13       THE COURT:  And I thank you again for making sure I covered

14  the cooperation.

15       Let me just look at my notes to make sure I have covered

16  all of it.

17       (Pause.)

18       I think some of the other provisions, since he is pleading

19  guilty, we don't have to address at the Plea Agreement, like

20  paragraphs 12 and 13?

21       MR. ENTIN:  Which paragraph, Judge?

22       THE COURT:  12 and 13.

23       Unless in the next five minutes he withdraws and decides he

24  wants to go to trial.

25       MR. O'QUINN:  Yes, Your Honor.  These all have been

1 executed in advance, and this document was executed on March 22.  We

2 had a very short day today with initial appearance and yesterday.

3 However, the withdrawal does include aspects that are post entry of

4 the plea.  So these still are enforceable even after the entry of

5 the guilty plea, Your Honor.

6            THE COURT:  Okay.  But there are more terms of the

7 contractual obligations, and Mr. Minkow has told me he has gone over

8 each one of these paragraphs with his counsel, and he told me, am I

9 correct, Mr. Minkow, that you feel you understand all of the terms

10 of the Plea Agreement and accept the consequences thereof?

11            THE DEFENDANT:  You are correct, ma'am.

12            THE COURT:  Okay.  So then let me ask you, having discussed

13 with you your rights to a trial and all of the rights associated

14 with the trial, having discussed with you the maximum sentence that

15 the Court can impose of five years in jail, having discussed with

16 you the impact that this plea will have on your civil rights, having

17 discussed with you also the mandatory restitution amounts, and

18 having discussed with you your waiver of a right to appeal the

19 sentence and any collateral attacks on the sentence, do you still

20 want to plead guilty in this case?

21 A.   Yes, ma'am.

22 Q.   Are you doing this willingly?

23 A.   I am, ma'am, yes.

24 Q.   Mr. Minkow, is it fair to say that your decision to plead

25 guilty is a decision that you have thoughtfully considered, looking

1  at all of your options, considering the consequences, and that you

2  are freely and voluntarily making this decision?

3  A.   I am, ma'am.

4  Q.   Why are you pleading guilty, Mr. Minkow?

5  A.   So that I don't cause the Court any greater expense by trying

6  to pretend that I'm not guilty of something I am guilty of.   I'm

7  just admitting early what I have done and try to make restitution to

8  the victim.

9            THE COURT:  Okay.

10            So I am going to formally ask you, how do you plead to the

11  charge in count -- I guess it's Count 1 of that Information, that

12  charges you with a conspiracy to commit securities fraud, guilty or

13  not guilty?

14            THE DEFENDANT:  Guilty, Your Honor.

15            THE COURT:  The Court finds --

16            What does the "J" stand for, Mr. Minkow?

17            THE DEFENDANT:  J-a-y is my middle name, ma'am.

18            THE COURT:  The Court finds the defendant Barry Jay Minkow

19  is very competent and capable of entering into an informed plea in

20  this case, he does understand the nature of the charge against him,

21  he appreciates the consequences of pleading guilty, he fully

22  understands his rights and the possible penalties.

23            The Court also finds that the evidence the government has

24  set forth in the factual proffer in paragraph 16 of the Plea

25  Agreement satisfies all of the elements of the crime charged in the

1  single count, Count 1 of the Information.

2        The Court also finds the defendant's decision to plead

3  guilty to this charge is a decision that he has freely, voluntarily,

4  knowingly and intelligently making, it is not the result of force or

5  threats or promises other than the promises contained in his written

6  Plea Agreement.

7        The Court also finds that the defendant has had the advice

8  and counsel of two -- at least one that I know of very competent

9  lawyers with whom he says that he is satisfied with both.  So I

10 presume that he is -- the person that I have not seen is equally

11 competent.  But I am comfortable that Mr. Entin has advised you and

12 that you have had the advice of a very competent lawyer with whom

13 you say that you are satisfied.  Therefore, I accept your guilty

14 plea.

15        The Court finds the defendant Barry Jay Minkow guilty of

16 the offense charged in Count 1 of the Information.

17        Mr. Minkow, I'm going to order the Presentence

18 Investigation Report.  I'm going to ask Mr. Entin to actually start

19 the process today.

20        You can have your counsel with you when you meet with the

21 Probation Office.  You don't have to have him.  Most defendants like

22 their counsel.

23        Once the report is completed, Mr. Entin will arrange for

24 you to have a copy of the report.  I need for you to very carefully

25 go over that report with a fine-tooth comb.  If you see anything in

1  the report that is incorrect, anything from a typographical error to

2  something more important, please bring that to the attention of the

3  Probation Office so that it can be corrected.

4           I'll be happy to consider any timely filed motions or

5  objections at the time of sentencing.

6           And the time of sentencing, Miss Webb?

7           COURTROOM DEPUTY:  Your Honor, that will be June 16 at 8:30

8  in the morning.

9           THE COURT:  Okay.

10           MR. ENTIN:  What time is that, ma'am?

11           THE COURT:  8:30.

12           It's good for you, Mr. Entin.

13           MR. ENTIN:  I got to leave at 6 in the morning to get here.

14  I'm coming from North Broward, Your Honor.

15           THE COURT:  Well, if it makes you feel any better, both

16  Miss Webb and Mr. Ehrlich and my permanent law clerk all come from

17  Broward.

18           MR. ENTIN:  Maybe we can car pool that day.

19           THE COURT:  They all get here though by 8 o'clock.  So

20  maybe that's the secret.  Or before 8.

21           What is the government's position on remand?

22           MR. O'QUINN:  Your Honor, the United States has no

23  objection to the defendant remaining on bond pending sentencing.

24           THE COURT:  And the bond is?

25           MR. O'QUINN:  Your Honor, a personal surety bond of $50,000

1  with a number of special conditions, including no securities

2  trading.

3          THE COURT:  Any substance abuse issues that were involved

4  in precipitating this?

5          MR. ENTIN:  No, Your Honor.

6          MR. O'QUINN:  Well, Your Honor, there is a substance abuse

7  condition in the bond.

8          THE COURT:  Okay.

9          Mr. Minkow, that is a significant benefit that the

10 government has given you that you can remain on bond pending

11 sentence.

12         It's very important between now and the time of sentencing

13 that you follow all of the terms and conditions of your bond

14 religiously, no pun intended, you need to show up for sentencing.

15 If you don't, that is a crime.  I will declare you a fugitive.  The

16 Marshals are very good at finding people under warrants.  And, most

17 importantly, you will lose all of the positive things you have been

18 able to negotiate in this Plea Agreement, because the Plea Agreement

19 will go up in smoke.

20         To put it into more positive terms, this is an opportunity

21 that you have been given to make of yourself a saint.  You want to

22 be so careful that you don't even go through a yellow light between

23 now and the time of sentencing on June 16.

24         Any questions?  Any other issues we have not addressed?

25         MR. O'QUINN:  Not from the United States.

1          MR. ENTIN:  None from the defense, Your Honor.

2          THE COURT:  I will see you all back here on June 16 at

3  8:30.

4          MR. O'QUINN:  Thank you, Your Honor.  Have a good day.

5          THE COURT:  We are in recess.

6           (Court recessed at 3:10 p.m.)

7

8                       **CERTIFICATION**

9

10  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD

11  OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12  April 1, 2011                    S/DAVID S. EHRLICH
                                     Official Court Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$100** [1] - 27:19
**$250,000** [1] - 26:4
**$400** [6] - 19:8,
21:12, 21:17, 21:21,
26:17, 26:18
**$50,000** [1] - 40:25
**$583** [1] - 21:6
**$583,573,600** [1] -
27:12

**'**

**'Thank** [1] - 29:23

**1**

**1** [6] - 1:6, 2:20, 7:10,
38:11, 39:1, 39:16
**10** [1] - 6:2
**11** [1] - 14:6
**11-20209** [1] - 2:2
**11-20209-CR-PAS**
[1] - 1:2
**11-4** [1] - 1:24
**110** [1] - 1:17
**12** [4] - 14:13, 14:17,
36:20, 36:22
**13** [2] - 36:20, 36:22
**14** [5] - 7:5, 28:25,
29:4, 29:20, 29:24
**15** [7] - 9:4, 14:1,
17:24, 18:1, 18:7,
18:17, 27:25
**15-page** [1] - 15:8
**16** [11] - 9:4, 13:22,
14:2, 14:4, 14:5, 14:7,
14:11, 38:24, 40:7,
41:23, 42:2
**17** [4] - 31:14, 33:19,
33:23, 35:11
**18** [7] - 10:21, 10:24,
12:21, 31:19, 32:2,
32:14, 33:2
**1970-110** [1] - 1:18
**1992** [1] - 6:21
**1993** [1] - 6:17
**1996** [1] - 6:14
**1997** [1] - 7:10

**2**

**2001** [1] - 7:16
**2010** [2] - 6:2, 6:6
**2011** [2] - 1:4, 15:10
**21** [3] - 33:22, 33:23,

35:12
**22** [3] - 5:4, 15:10,
37:1
**2241** [2] - 29:15,
29:16
**2254** [1] - 29:15
**2255** [2] - 29:9, 29:14
**23** [1] - 15:15
**24** [2] - 8:10, 8:15
**2:04** [1] - 2:1

**3**

**30** [1] - 1:4
**305** [1] - 1:25
**33128-1810** [1] - 1:24
**33132** [1] - 1:14
**33301** [1] - 1:18
**35** [2] - 31:17, 35:17
**3553(a** [2] - 12:22,
19:25
**3663(A** [1] - 26:12
**3:10** [1] - 42:6

**4**

**40** [1] - 19:18
**400** [2] - 1:24, 26:16
**45** [1] - 5:25
**4th** [1] - 1:14

**5**

**500** [4] - 9:7, 20:22,
20:23, 21:3
**523-5537** [1] - 1:25
**583** [1] - 26:19
**5K.1** [1] - 31:17
**5K1.1** [1] - 35:16

**6**

**6** [2] - 19:6, 40:13
**6th** [1] - 1:17

**7**

**7** [4] - 17:24, 17:25,
18:10, 20:2

**8**

**8** [3] - 19:3, 40:19,
40:20
**85** [1] - 27:24
**8:30** [3] - 40:7, 40:11,

42:3

**9**

**9** [2] - 14:5, 19:5
**99** [1] - 1:14

**A**

**ability** [1] - 8:11
**able** [8] - 3:14, 7:17,
17:5, 25:1, 28:9, 30:5,
30:24, 41:18
**abolished** [1] - 27:23
**ABOVE** [1] - 42:11
**ABOVE-ENTITLED**
[1] - 42:11
**absolutely** [1] - 13:3
**abuse** [3] - 20:8,
41:3, 41:6
**accept** [6] - 16:6,
22:3, 25:14, 28:3,
37:10, 39:13
**acceptance** [2] -
12:13, 19:4
**accepted** [1] - 7:11
**accordance** [1] -
25:15
**accurately** [1] -
14:20
**acquired** [1] - 32:4
**acted** [1] - 35:6
**action** [1] - 10:2
**activities** [1] - 32:4
**acts** [1] - 19:25
**actual** [1] - 10:18
**addiction** [2] - 8:8
**addition** [3] - 26:3,
26:8, 29:19
**additional** [4] - 4:5,
18:2, 18:18, 26:1
**additions** [1] - 14:23
**address** [3] - 20:4,
31:20, 36:19
**addressed** [1] -
41:24
**adjustment** [2] -
18:1, 19:4
**adjustments** [1] -
12:12
**admit** [1] - 25:11
**admitting** [1] - 38:7
**advance** [1] - 37:1
**advantage** [1] - 35:6
**adversely** [1] - 8:17
**advice** [4] - 22:9,
30:19, 39:7, 39:12
**advised** [2] - 5:12,

39:11
**advising** [1] - 5:17
**advisory** [3] - 11:16,
11:25, 16:15
**affect** [3] - 8:11,
8:18, 27:1
**affected** [1] - 31:10
**affects** [1] - 31:2
**afford** [2] - 18:13,
24:1
**afternoon** [4] - 2:5,
2:13, 2:17, 8:12
**age** [1] - 5:24
**agencies** [1] - 20:20
**Agent** [1] - 2:9
**ago** [1] - 7:10
**agree** [4] - 16:7,
18:18, 33:23, 36:3
**agreed** [13] - 10:12,
10:13, 21:12, 21:19,
26:16, 26:18, 32:3,
32:14, 34:11, 34:12,
35:10
**Agreement** [41] -
4:14, 4:24, 5:1, 8:21,
13:19, 13:22, 13:24,
14:1, 14:6, 14:8,
14:18, 15:8, 15:14,
15:15, 15:23, 16:1,
16:3, 16:6, 16:7,
16:19, 16:25, 17:7,
17:12, 17:15, 21:20,
22:3, 22:4, 22:7,
25:15, 28:25, 29:4,
32:2, 33:19, 36:8,
36:9, 36:19, 37:10,
38:25, 39:6, 41:18
**agreement** [6] - 18:5,
18:8, 18:21, 19:12,
34:10, 34:17
**Agreements** [1] -
34:18
**agrees** [1] - 18:2
**ailment** [1] - 5:12
**alcohol** [2] - 8:8,
8:15
**alleged** [1] - 20:19
**allow** [1] - 34:12
**allowed** [1] - 18:9
**allows** [1] - 29:22
**alone** [1] - 21:19
**ALVIN** [1] - 1:16
**Alvin** [1] - 2:13
**amen** [1] - 30:16
**Amendment** [2] -
25:9, 33:6
**AMERICA** [1] - 1:3
**America** [1] - 2:3
**amount** [4] - 8:25,
12:7, 17:15, 19:16

**amounts** [1] - 37:17
**ample** [1] - 15:25
**analysis** [1] - 21:9
**and-a-half** [1] - 7:10
**Andjich** [1] - 2:10
**answered** [1] - 8:4
**apologize** [3] -
28:23, 29:18, 31:21
**appeal** [9] - 28:15,
29:4, 29:19, 30:5,
30:9, 30:22, 31:3,
31:11, 37:18
**appearance** [3] -
4:18, 4:19, 37:2
**APPEARANCES** [1] -
1:11
**appearances** [1] -
2:4
**appearing** [1] - 33:25
**appellate** [1] - 30:6
**applicable** [1] -
29:12
**apply** [3] - 11:17,
17:12, 16:16
**appoints** [1] - 24:2
**appreciates** [1] -
38:21
**appropriate** [4] -
12:4, 12:18, 20:1,
21:1
**argue** [2] - 17:25,
24:18
**argument** [4] -
18:12, 18:14, 26:22,
26:23
**arrange** [1] - 39:23
**arranges** [1] - 24:2
**artfully** [1] - 18:7
**artifice** [1] - 10:22
**artificial** [1] - 26:21
**Arts** [3] - 6:1, 6:15,
6:16
**aspects** [1] - 37:3
**assessment** [2] -
27:19, 27:21
**assets** [6] - 32:4,
32:6, 32:8, 32:10,
32:20, 33:10
**assistance** [2] -
34:7, 35:15
**Assistant** [1] - 1:13
**associated** [2] -
12:6, 37:13
**assure** [1] - 34:23
**attacking** [1] - 29:8
**attacks** [1] - 37:19
**attempt** [3] - 3:11,
20:23, 34:12
**attempts** [1] - 34:7
**attention** [1] - 40:2

**Attorney** [1] - 1:13
**attributable** [1] - 19:24
**available** [1] - 7:22
**aware** [38] - 11:20, 11:24, 12:3, 12:14, 12:18, 12:24, 12:25, 13:4, 13:9, 13:11, 13:14, 24:3, 24:5, 24:14, 24:16, 24:22, 24:25, 25:2, 25:4, 25:6, 26:3, 26:6, 26:7, 26:11, 27:7, 27:18, 27:20, 28:2, 28:7, 28:9, 28:14, 28:16, 28:24, 29:5, 30:6, 35:23, 36:5

**B**

**Bachelor** [1] - 6:20
**Bachelor's** [1] - 6:1
**BARRY** [2] - 1:6, 4:12
**Barry** [5] - 2:3, 2:14, 5:25, 38:18, 39:15
**base** [3] - 12:4, 12:8, 19:6
**based** [1] - 9:8
**basis** [2] - 18:12, 18:16
**Bates** [1] - 34:25
**bear** [1] - 23:16
**BEFORE** [1] - 1:9
**began** [1] - 7:15
**begin** [1] - 5:23
**beginning** [1] - 22:13
**behalf** [4] - 2:6, 2:14, 22:14, 24:11
**behavior** [1] - 27:25
**beings** [2] - 30:1, 30:2
**believes** [2] - 21:5, 35:25
**benefit** [3] - 23:9, 34:12, 41:9
**benefits** [1] - 30:17
**best** [1] - 36:1
**better** [2] - 18:24, 40:15
**between** [7] - 10:11, 13:20, 17:24, 26:15, 32:22, 41:12, 41:22
**beyond** [7] - 4:4, 16:11, 18:4, 23:4, 23:8, 25:1, 32:25
**Bible** [2] - 6:3, 7:5
**birthday** [1] - 15:13
**bit** [1] - 18:7

**blue** [1] - 15:11
**bond** [6] - 40:23, 40:24, 40:25, 41:7, 41:10, 41:13
**bottom** [2] - 19:20, 29:21
**bound** [2] - 16:7, 17:3
**bring** [2] - 24:13, 40:2
**brings** [1] - 12:13
**broadcast** [1] - 20:21
**Broward** [2] - 40:14, 40:17
**burden** [5] - 21:8, 23:3, 23:6, 23:11, 23:12
**Bureau** [1] - 2:10
**burn** [2] - 34:15
**buying** [1] - 35:2
**buzz** [2] - 29:2, 29:3
**BY** [8] - 1:22, 5:22, 9:11, 10:25, 22:1, 27:5, 27:13, 31:25

**C**

**calculate** [1] - 12:3
**calculation** [1] - 30:3
**calculations** [1] - 13:8
**California** [3] - 5:9, 6:3, 7:8
**cannot** [6] - 13:16, 16:17, 24:1, 24:9, 24:21, 32:17
**capable** [2] - 5:3, 38:19
**capacity** [1] - 8:18
**car** [1] - 40:18
**care** [1] - 31:24
**career** [1] - 30:12
**careful** [1] - 41:22
**carefully** [4] - 11:7, 14:10, 15:14, 39:24
**carries** [1] - 19:6
**case** [37] - 4:6, 7:23, 9:5, 9:13, 10:20, 10:23, 11:8, 11:17, 12:7, 14:21, 15:4, 16:14, 16:16, 17:19, 18:15, 20:1, 20:19, 21:1, 21:3, 21:5, 21:6, 21:17, 22:10, 23:13, 23:21, 25:1, 25:20, 26:21, 27:2, 27:10, 27:12, 29:13, 31:12, 32:18, 35:5, 37:20, 38:20

**Case** [2] - 1:2, 2:2
**causation** [1] - 21:8
**caused** [1] - 21:2
**cell** [1] - 29:1
**certain** [1] - 9:17
**certainly** [1] - 23:24
**CERTIFICATION** [1] - 42:8
**CERTIFY** [1] - 42:10
**challenge** [2] - 13:8, 29:16
**chance** [1] - 3:20
**change** [1] - 22:21
**CHANGE** [1] - 1:8
**changed** [1] - 22:23
**changes** [2] - 13:23, 14:23
**characteristic** [1] - 19:7
**characteristics** [3] - 12:6, 18:3, 18:19
**charge** [12] - 4:2, 11:5, 11:14, 16:12, 16:15, 16:20, 23:4, 23:7, 23:12, 38:11, 38:20, 39:3
**charged** [4] - 19:13, 25:20, 38:25, 39:16
**charges** [2] - 2:21, 38:12
**chat** [1] - 3:21
**chronic** [1] - 5:8
**church** [1] - 6:21
**Church** [1] - 7:5
**circumstance** [1] - 35:4
**circumstances** [1] - 28:14
**citizen** [2] - 7:2, 28:5
**civil** [3] - 9:2, 31:9, 37:16
**CJA** [1] - 23:20
**clarify** [1] - 20:17
**clear** [5] - 3:9, 10:6, 15:7, 20:19, 21:15
**clearer** [1] - 3:11
**clearly** [1] - 35:4
**clerk** [1] - 40:16
**client** [4] - 4:25, 8:25, 9:10, 31:14
**client's** [1] - 34:21
**clients** [1] - 30:13
**close** [1] - 19:17
**co** [1] - 7:15
**co-founder** [1] - 7:15
**coconspirator** [3] - 20:24, 20:25, 35:5
**Code** [1] - 12:21
**coerced** [1] - 22:6

**collateral** [1] - 37:19
**collaterally** [1] - 29:8
**College** [1] - 6:3
**comb** [1] - 39:25
**comfortable** [4] - 31:2, 31:3, 33:12, 39:11
**coming** [2] - 35:8, 40:14
**commit** [5] - 2:21, 10:2, 10:7, 10:15, 38:12
**committing** [1] - 33:9
**common** [1] - 10:23
**communicate** [1] - 7:17
**communicated** [1] - 4:25
**Communities** [1] - 7:5
**company** [2] - 20:22, 20:24
**company's** [1] - 21:4
**competence** [1] - 8:20
**competent** [4] - 38:19, 39:8, 39:11, 39:12
**complete** [1] - 33:24
**completed** [1] - 39:23
**concept** [2] - 23:10
**concerned** [1] - 23:6
**condition** [2] - 5:2, 41:7
**conditions** [2] - 41:1, 41:13
**conduct** [4] - 21:10, 21:16, 34:21, 34:22
**confidential** [1] - 9:19
**conflict** [2] - 17:24, 18:25
**congregated** [1] - 5:13
**Congress's** [1] - 27:21
**conjunction** [1] - 21:11
**connection** [4] - 10:22, 19:15, 20:22, 21:18
**cons** [1] - 30:9
**consequences** [7] - 3:3, 8:1, 9:13, 25:19, 37:10, 38:1, 38:21
**consider** [3] - 11:25, 12:19, 40:4
**considered** [2] - 3:2,

**37:25**
**considering** [2] - 34:16, 38:1
**conspiracy** [6] - 2:21, 9:25, 10:1, 10:3, 10:7, 38:12
**constitute** [1] - 34:7
**constitutes** [1] - 18:10
**Constitution** [1] - 25:9
**contained** [2] - 16:19, 39:5
**context** [1] - 21:19
**contractual** [1] - 37:7
**convened** [1] - 2:1
**conversation** [1] - 10:3
**convey** [1] - 18:11
**convicted** [1] - 28:4
**conviction** [1] - 29:10
**cooperate** [7] - 33:24, 34:6, 34:7, 34:12, 35:10, 35:11, 35:20
**cooperating** [2] - 31:15, 36:1
**cooperation** [8] - 31:16, 32:9, 33:23, 34:10, 34:17, 34:23, 35:14, 36:14
**copy** [2] - 13:24, 39:24
**corporation** [1] - 21:9
**Corporation** [1] - 10:24
**CORRECT** [1] - 42:10
**correct** [12] - 2:22, 4:16, 14:7, 14:15, 18:6, 19:11, 19:22, 20:10, 21:23, 29:18, 37:9, 37:11
**corrected** [1] - 40:3
**corrections** [1] - 14:23
**corroboratable** [1] - 34:24
**counsel** [32] - 2:4, 2:9, 5:3, 7:22, 9:14, 9:19, 9:23, 11:2, 11:7, 11:10, 12:25, 13:21, 14:17, 15:17, 16:10, 17:10, 17:12, 18:13, 22:16, 23:19, 23:25, 24:3, 25:19, 27:22, 28:22, 31:22,

32:23, 37:8, 39:8, 39:20, 39:22
**counsel** [1] - 26:15
**Count** [4] - 2:20, 38:11, 39:1, 39:16
**count** [4] - 14:13, 14:14, 38:11, 39:1
**country** [1] - 7:2
**course** [2] - 16:17, 34:6
**COURT** [86] - 1:1, 2:7, 2:12, 2:15, 2:17, 2:24, 3:7, 3:13, 3:17, 3:23, 4:10, 4:13, 4:21, 5:4, 5:7, 5:10, 5:14, 5:17, 5:19, 5:22, 8:19, 8:24, 9:8, 9:10, 9:11, 10:6, 10:15, 10:25, 13:23, 14:3, 14:13, 17:11, 17:23, 18:17, 18:23, 19:1, 19:12, 19:16, 19:20, 20:6, 20:11, 20:13, 20:15, 21:22, 21:24, 22:1, 23:20, 23:23, 26:14, 26:17, 27:4, 27:6, 27:10, 27:14, 29:1, 29:10, 29:14, 29:16, 31:18, 31:22, 32:1, 32:7, 32:12, 33:20, 34:3, 34:8, 34:15, 35:9, 36:7, 36:11, 36:13, 36:22, 37:6, 37:12, 38:9, 38:15, 38:18, 40:9, 40:11, 40:15, 40:19, 40:24, 41:3, 41:8, 42:2, 42:5
**Court** [23] - 1:22, 2:1, 17:2, 17:3, 18:14, 19:23, 21:21, 24:2, 25:22, 26:4, 31:9, 34:23, 37:15, 38:5, 38:15, 38:18, 38:23, 39:2, 39:7, 39:15, 42:6, 42:12
**court** [2] - 2:11, 9:3
**Court's** [1] - 23:14
**courthouse** [1] - 1:23
**COURTROOM** [1] - 40:7
**Courtroom** [1] - 4:11
**courtroom** [2] - 23:2, 23:10
**cover** [1] - 36:8
**covered** [5] - 17:12, 20:11, 36:7, 36:13, 36:15
**crazy** [1] - 29:3
**create** [1] - 20:23

**crime** [4] - 12:5, 12:6, 38:25, 41:15
**criminal** [3] - 2:2, 4:5, 12:14
**cross** [2] - 24:7, 31:22
**cross-examine** [1] - 24:7

# D

**damage** [1] - 21:2
**date** [1] - 15:9
**DATE** [1] - 42:12
**DAVID** [1] - 1:22
**dealing** [1] - 9:1
**decide** [4] - 11:24, 18:14, 24:8, 25:6
**decided** [3] - 10:2, 24:16, 24:21
**decides** [2] - 24:9, 36:23
**decision** [12] - 3:1, 3:4, 3:5, 30:21, 30:25, 31:3, 37:24, 37:25, 38:2, 39:2, 39:3
**declare** [1] - 41:15
**defendant** [15] - 10:12, 13:20, 17:18, 17:25, 18:2, 18:17, 19:25, 32:2, 32:22, 34:5, 36:1, 38:18, 39:7, 39:15, 40:23
**Defendant** [1] - 1:7
**DEFENDANT** [11] - 1:15, 2:23, 3:6, 3:12, 3:16, 3:22, 4:9, 5:21, 37:11, 38:14, 38:17
**defendant's** [6] - 8:20, 18:4, 19:25, 21:10, 21:16, 39:2
**defendants** [1] - 39:21
**defense** [10] - 11:13, 18:13, 21:11, 21:18, 24:8, 24:17, 24:22, 26:22, 33:5, 42:1
**defenses** [1] - 16:15
**defraud** [1] - 10:22
**Degree** [3] - 6:1, 6:2, 6:20
**degree** [1] - 6:7
**degrees** [1] - 6:22
**deliberations** [1] - 24:22
**Della** [1] - 1:17
**deluded** [1] - 35:5
**demanded** [1] - 20:25

**depart** [1] - 29:23
**departure** [1] - 17:25
**departures** [3] - 12:20, 18:4, 18:19
**Deputy** [1] - 4:11
**DEPUTY** [4] - 40:7
**describe** [1] - 14:20
**description** [1] - 15:3
**desire** [1] - 27:21
**details** [1] - 9:18
**determine** [2] - 12:18, 13:2
**determined** [1] - 27:3
**determines** [1] - 35:15
**determining** [1] - 12:15
**Diego** [1] - 7:8
**different** [3] - 13:12, 22:12
**differently** [1] - 22:14
**diminution** [2] - 21:3, 26:22
**directly** [1] - 4:23
**Discovery** [1] - 7:15
**discretion** [2] - 34:14, 35:13
**discuss** [7] - 8:1, 9:12, 11:13, 14:17, 15:19, 17:17, 21:18
**discussed** [14] - 9:17, 11:16, 12:25, 17:10, 31:6, 31:7, 31:8, 31:9, 31:10, 37:12, 37:14, 37:15, 37:17, 37:18
**discussing** [2] - 9:6, 16:14
**discussion** [4] - 11:1, 13:20, 26:15, 32:22
**discussions** [2] - 9:18, 16:10
**dispute** [1] - 35:6
**DISTRICT** [3] - 1:1, 1:1, 1:9
**district** [1] - 4:18
**District** [1] - 9:4
**Divinity** [3] - 6:2, 6:8, 6:9
**DIVISION** [1] - 1:2
**doctor** [2] - 6:8, 8:17
**Doctorate** [1] - 6:2
**doctorate** [1] - 6:3
**document** [2] - 15:9, 37:1
**documents** [3] -

9:25, 34:25, 35:3
**Donald** [1] - 4:15
**done** [3] - 7:4, 7:12, 38:7
**dot** [1] - 31:23
**doubt** [7] - 4:4, 16:11, 23:4, 23:8, 23:9, 25:1, 33:1
**down** [3] - 7:10, 12:10, 12:13
**downward** [6] - 12:19, 18:3, 18:4, 18:18, 18:19, 19:3
**draft** [1] - 13:24
**drafted** [2] - 18:7, 18:24
**drink** [1] - 8:10
**driven** [1] - 12:7
**driving** [1] - 29:3
**drug** [1] - 8:7
**drugs** [1] - 8:15
**due** [2] - 32:18, 34:19
**during** [1] - 24:2

# E

**early** [1] - 38:7
**eat** [1] - 8:10
**economic** [1] - 20:23
**education** [2] - 5:24, 30:18
**effect** [1] - 26:25
**EHRLICH** [2] - 1:22, 42:12
**Ehrlich** [2] - 29:3, 40:16
**Eighth** [1] - 33:6
**either** [2] - 8:19, 32:20
**elements** [3] - 10:7, 10:21, 38:25
**eligibility** [1] - 12:12
**empowered** [1] - 4:19
**encourage** [1] - 3:18
**end** [3] - 22:22, 23:15, 25:10
**enforceable** [1] - 37:4
**English** [1] - 7:20, 29:21
**enhancement** [2] - 20:7, 20:9
**enter** [3] - 2:20, 8:20, 22:7
**entering** [3] - 4:19, 34:9, 38:19
**ENTIN** [32] - 1:16,

2:13, 2:16, 4:16, 5:5, 5:11, 5:16, 5:18, 8:23, 9:9, 14:15, 19:11, 19:19, 19:22, 20:10, 21:23, 23:22, 23:24, 26:16, 26:18, 31:13, 31:21, 32:9, 34:2, 34:19, 36:12, 36:21, 40:10, 40:13, 40:18, 41:5, 42:1
**Entin** [26] - 1:17, 2:13, 2:15, 2:24, 3:17, 5:2, 7:18, 8:19, 8:24, 10:4, 10:5, 14:19, 15:18, 22:10, 23:5, 23:20, 30:8, 30:11, 33:15, 35:20, 36:11, 39:11, 39:18, 39:23, 40:12
**entire** [1] - 16:3
**ENTITLED** [1] - 42:11
**entitlement** [1] - 32:20
**entry** [2] - 37:3, 37:4
**equally** [1] - 39:10
**error** [1] - 40:1
**ESQ** [2] - 1:13, 1:16
**estimate** [4] - 13:12, 13:16, 16:17, 17:17
**evaluate** [1] - 35:13
**everyday** [1] - 5:21
**evidence** [7] - 11:4, 11:7, 16:13, 21:7, 21:13, 32:25, 38:23
**EXAMINATION** [3] - 27:5, 27:13, 31:25
**examine** [1] - 24:7
**example** [1] - 17:14
**excess** [2] - 9:7, 21:12
**excessive** [1] - 33:6
**excuse** [1] - 34:21
**executed** [1] - 37:1
**expense** [1] - 38:5
**expensive** [1] - 30:14
**experience** [2] - 9:1, 30:18
**experienced** [1] - 30:12
**explain** [9] - 11:10, 22:16, 22:17, 22:20, 23:1, 23:19, 23:25, 25:19, 27:22
**exposure** [3] - 17:18, 26:6, 35:16
**extensive** [2] - 17:11, 30:12
**extent** [2] - 5:24,

36:5
**eyes** [1] - 28:4

# F

**fact** [8] - 13:14, 21:16, 24:19, 24:21, 26:24, 28:16, 30:5, 36:5
**factors** [3] - 9:6, 12:21, 20:1
**facts** [7] - 9:6, 9:24, 12:11, 20:19, 28:7, 34:20, 36:3
**factual** [7] - 14:6, 14:20, 14:24, 15:3, 16:19, 34:9, 38:24
**fails** [1] - 23:7
**fair** [1] - 37:24
**false** [4] - 10:16, 20:21, 21:2, 26:25
**far** [1] - 23:5
**fashion** [1] - 7:17
**federal** [2] - 20:20, 27:22
**Federal** [3] - 2:10, 11:16, 11:25
**felon** [2] - 28:4, 28:5
**felony** [1] - 25:20
**felt** [2] - 7:23, 7:25
**Fera** [1] - 1:17
**Ferguson** [1] - 1:23
**Fifth** [1] - 25:9
**figure** [5] - 21:1, 21:20, 26:18, 27:2, 27:3
**file** [2] - 35:16, 35:21
**filed** [2] - 4:17, 40:4
**files** [1] - 36:1
**final** [1] - 13:25
**financial** [1] - 26:6
**fine** [5] - 26:4, 26:8, 27:20, 33:6, 39:25
**fine-tooth** [1] - 39:25
**finished** [1] - 5:11
**firearm** [1] - 28:7
**first** [6] - 9:22, 11:21, 12:4, 17:21, 19:2, 31:24
**five** [7] - 19:7, 19:15, 19:21, 25:23, 31:8, 36:23, 37:15
**five-year** [1] - 19:15
**FL** [2] - 1:14, 1:18
**Florida** [2] - 1:24, 9:4
**FLORIDA** [2] - 1:1, 1:3
**fly** [1] - 5:12
**flying** [1] - 5:9

follow [2] - 24:20, 41:13
**followed** [1] - 25:24
**following** [1] - 9:20
**FOR** [2] - 1:12, 1:15
**force** [2] - 35:21, 39:4
**forced** [1] - 22:6
**forcing** [1] - 3:4
**FOREGOING** [1] - 42:10
**foremost** [1] - 9:22
**forensic** [1] - 21:9
**forfeiture** [1] - 31:19, 31:24, 32:3
**form** [1] - 34:4
**formal** [2] - 4:17, 5:24
**formally** [1] - 38:10
**Fort** [1] - 1:18
**forth** [1] - 38:24
**Fortune** [3] - 20:22, 20:23, 21:3
**founder** [1] - 7:15
**fraud** [10] - 2:21, 7:15, 10:2, 10:8, 10:16, 10:21, 10:24, 32:21, 38:12
**free** [1] - 23:10
**freely** [4] - 3:4, 31:11, 38:2, 39:3
**Freeman** [1] - 9:3
**FROM** [2] - 42:10, 10:1
**front** [2] - 9:3, 15:8
**fugitive** [1] - 41:15
**full** [1] - 5:23
**fully** [2] - 30:24, 38:21

# G

**gain** [1] - 26:5
**generally** [1] - 31:16
**given** [9] - 6:22, 13:24, 22:10, 26:1, 30:17, 34:8, 35:1, 41:10, 41:21
**goal** [1] - 10:1
**government** [33] - 4:2, 4:22, 9:23, 10:4, 13:7, 13:13, 16:4, 16:11, 23:3, 23:6, 23:7, 23:11, 24:9, 24:18, 24:25, 28:15, 31:15, 32:7, 32:15, 32:17, 32:19, 33:10, 33:24, 34:9, 34:16, 34:25, 35:7, 35:10, 35:12, 35:15, 35:21,

38:23, 41:10
**GOVERNMENT** [1] - 1:12
**government's** [7] - 11:4, 11:8, 16:13, 20:18, 24:7, 33:21, 40:21
**Grand** [1] - 33:25
**grant** [3] - 36:3, 36:4
**greater** [9] - 13:1, 19:8, 19:10, 21:16, 21:21, 26:5, 29:22, 32:24, 38:5
**gross** [1] - 26:5
**guess** [1] - 38:11
**guide** [1] - 12:1
**guideline** [6] - 12:4, 12:15, 12:19, 13:1, 19:9, 19:20
**Guidelines** [4] - 11:16, 11:25, 12:20, 16:16
**guidelines** [3] - 11:20, 19:9, 30:3
**guilt** [2] - 16:20, 25:11
**guilty** [38] - 2:20, 3:1, 4:4, 8:21, 16:12, 17:5, 22:4, 22:7, 22:16, 22:21, 23:9, 23:15, 25:2, 25:6, 25:8, 25:14, 25:15, 25:19, 28:3, 28:10, 31:1, 31:12, 36:19, 37:5, 37:20, 37:25, 38:4, 38:6, 38:12, 38:13, 38:14, 38:21, 39:3, 39:13, 39:15

# H

**half** [1] - 7:10
**hand** [1] - 4:11
**handling** [1] - 9:2
**happy** [1] - 40:4
**health** [2] - 5:1, 5:7
**hear** [2] - 24:6, 29:3
**heard** [3] - 13:17, 16:18, 17:10
**HEARING** [1] - 1:8
**hearing** [4] - 21:14, 22:22, 25:10, 29:2
**hearings** [1] - 34:1
**heavy** [1] - 30:13
**help** [1] - 10:3
**helpful** [1] - 3:18
**hide** [1] - 24:18
**high** [2] - 26:19, 27:12

hint [1] - 17:15
**history** [2] - 12:14, 34:8
**hold** [1] - 28:6
**HON** [1] - 1:9
**Honor** [58] - 2:5, 2:13, 2:16, 4:16, 4:18, 4:23, 5:5, 5:6, 5:8, 5:11, 5:16, 8:22, 8:23, 9:2, 9:7, 9:9, 10:9, 10:20, 13:25, 14:16, 18:6, 18:25, 19:11, 19:14, 20:5, 20:12, 20:14, 20:18, 23:22, 26:16, 26:20, 27:11, 28:22, 29:11, 29:15, 29:18, 31:15, 31:21, 32:6, 32:10, 34:4, 34:11, 34:20, 35:4, 35:8, 36:10, 36:12, 36:25, 37:5, 38:14, 40:7, 40:14, 40:22, 40:25, 41:5, 41:6, 42:1, 42:4
**honorary** [2] - 6:3, 6:7
**hours** [3] - 8:10, 8:15, 9:7
**human** [3] - 30:1, 30:2, 35:25
**humanly** [1] - 35:20

# I

**I's** [1] - 31:23
**identified** [3] - 32:5, 32:6, 32:10
**identifying** [1] - 32:7
**illegal** [1] - 32:4
**illness** [3] - 4:17, 5:14, 8:7
**imagine** [1] - 19:17
**immediately** [1] - 15:10
**impact** [4] - 15:20, 17:6, 29:24, 37:16
**impacts** [1] - 28:2
**impediments** [1] - 5:20
**important** [8] - 3:7, 3:13, 3:25, 4:7, 7:23, 17:17, 40:2, 41:12
**importantly** [3] - 3:23, 28:9, 41:17
**impose** [4] - 4:6, 13:1, 13:11, 17:4, 25:22, 26:4, 27:23, 28:11, 28:16, 31:9, 37:15

imposed [2] - 4:5, 27:7
**imprisonment** [4] - 19:7, 25:23, 25:24, 27:23
**IN** [1] - 42:11
**incarceration** [2] - 26:4, 29:17
**include** [1] - 37:3
**included** [1] - 34:5
**including** [2] - 29:5, 41:1
**inclusive** [1] - 29:12
**incorrect** [1] - 40:1
**incriminate** [1] - 25:10
**indicate** [1] - 34:6
**indicates** [1] - 31:14
**individuals** [1] - 10:11
**Information** [5] - 2:20, 19:13, 38:11, 39:1, 39:16
**information** [4] - 33:25, 34:13, 35:1, 35:7
**informed** [2] - 30:24, 38:19
**initial** [2] - 12:1, 37:2
**ink** [1] - 15:11
**innocence** [2] - 23:2, 23:11
**inquires** [1] - 31:16
**inquiring** [1] - 31:13
**Institute** [1] - 7:15
**instruction** [3] - 24:19, 24:20
**intelligently** [1] - 39:4
**intended** [2] - 12:7, 41:14
**intends** [1] - 18:11
**interest** [1] - 32:3
**interested** [2] - 20:13, 34:9
**interrupting** [1] - 28:23, 31:21
**Investigation** [5] - 2:10, 11:21, 13:5, 13:9, 39:18
**involved** [4] - 6:22, 19:17, 34:18, 41:3
**involves** [1] - 9:5
**IS** [1] - 42:10
**issuance** [1] - 10:19
**issue** [3] - 26:20, 33:15, 33:16
**issues** [2] - 41:3, 41:24

## J

**jail** [2] - 25:23, 37:15
**JAY** [1] - 38:17
**Jay** [3] - 5:25, 38:18, 39:15
**job** [1] - 34:17
**join** [1] - 10:13
**jointly** [1] - 21:20
**Jr** [1] - 1:23
**JUDGE** [1] - 1:9
**Judge** [8] - 9:3, 14:15, 19:19, 29:21, 31:13, 34:2, 34:19, 36:21
**judges** [1] - 30:1
**judgment** [1] - 35:14
**June** [5] - 6:2, 6:6, 40:7, 41:23, 42:2
**juries** [1] - 25:1
**jury** [6] - 23:7, 24:19, 25:4, 25:5, 28:6, 33:1
**Jury** [1] - 33:25

## K

**knowingly** [1] - 39:4
**knows** [1] - 17:18

## L

**language** [2] - 31:14, 34:4
**last** [4] - 6:5, 8:15, 15:9, 18:7
**Lauderdale** [1] - 1:18
**law** [4] - 23:8, 28:4, 29:22, 40:16
**lawyer** [6] - 24:1, 24:2, 24:6, 30:12, 39:12
**lawyers** [3] - 7:18, 13:12, 39:9
**least** [5] - 9:17, 25:25, 26:16, 27:24, 39:8
**leave** [1] - 40:13
**legal** [1] - 22:9
**Lennar** [1] - 10:23
**lesser** [1] - 32:25
**level** [7] - 12:9, 18:4, 19:6, 19:18, 20:7, 20:8
**Liberty** [4] - 6:10, 6:11, 6:19, 6:21
**life** [3] - 15:20, 27:16, 30:18
**light** [1] - 41:22

**limits** [1] - 29:4
**line** [3] - 15:10, 19:20, 29:21
**Lipitor** [1] - 8:16
**literally** [1] - 33:9
**litigation** [1] - 9:2
**located** [1] - 7:7
**look** [10] - 12:5, 12:8, 12:11, 12:12, 12:14, 12:15, 17:21, 18:1, 36:2, 36:15
**looking** [5] - 3:2, 4:14, 12:4, 19:16, 37:25
**lose** [2] - 28:5, 41:17
**loss** [12] - 12:7, 12:8, 19:7, 19:16, 19:24, 21:1, 21:5, 21:7, 21:12, 21:17, 21:20, 26:5
**lying** [1] - 4:2
**Lynchburg** [1] - 6:12

## M

**ma'am** [98] - 2:23, 3:6, 3:12, 3:16, 3:22, 4:9, 5:21, 6:6, 6:8, 6:10, 6:24, 7:1, 7:13, 7:19, 7:21, 7:24, 8:3, 8:6, 8:9, 8:13, 8:18, 9:15, 11:3, 11:6, 11:9, 11:12, 11:15, 11:18, 11:23, 12:2, 12:17, 12:23, 13:3, 13:10, 13:15, 13:18, 14:9, 14:12, 14:22, 14:25, 15:2, 15:5, 15:16, 15:18, 15:21, 15:24, 16:2, 16:5, 16:8, 16:21, 16:24, 17:8, 22:5, 22:8, 22:11, 22:15, 22:19, 22:25, 23:14, 23:18, 24:4, 24:15, 24:24, 25:3, 25:7, 25:13, 25:18, 25:21, 26:2, 26:7, 26:10, 26:13, 27:8, 27:20, 28:1, 28:8, 28:13, 28:20, 29:7, 29:25, 30:7, 30:10, 30:14, 30:20, 31:5, 32:16, 33:4, 33:8, 33:11, 33:13, 35:23, 36:6, 37:11, 37:21, 37:23, 38:3, 38:17, 40:10
**man** [1] - 23:10
**mandatory** [4] - 17:19, 26:11, 27:7,
37:17
**MAR** [1] - 6:16
**March** [5] - 1:4, 5:4, 7:10, 15:9, 37:1
**Maritza** [1] - 4:11
**market** [1] - 20:21
**Marshals** [2] - 24:13, 41:16
**Master** [1] - 6:1
**Masters** [4] - 6:1, 6:9, 6:15, 6:16
**material** [1] - 10:17
**MATTER** [1] - 42:11
**matter** [3] - 10:9, 13:13, 19:15
**matters** [2] - 9:17, 20:2
**maximum** [1] - 19:6, 19:10, 19:22, 27:24, 31:8, 37:14
**mean** [4] - 32:18, 34:15, 34:16, 34:17
**meaning** [2] - 6:7, 17:3
**means** [4] - 10:16, 17:2, 20:9, 23:2
**medications** [2] - 8:14, 8:15
**meet** [2] - 21:13, 39:20
**mental** [2] - 8:7, 8:18
**merely** [3] - 10:21, 17:2, 17:7
**MIAMI** [2] - 1:2, 1:3
**Miami** [3] - 1:14, 1:24, 1:24
**middle** [1] - 38:17
**might** [3] - 11:17, 12:12, 16:16
**migraines** [1] - 8:17
**million** [6] - 19:8, 21:6, 21:12, 21:17, 21:21, 26:18
**mind** [5] - 3:24, 16:20, 16:23, 22:22, 22:23
**minimum** [1] - 26:4
**Ministries** [1] - 6:21
**minkow** [1] - 35:2
**Minkow** [23] - 2:3, 2:14, 2:17, 2:19, 5:15, 5:19, 5:25, 9:12, 20:20, 22:2, 23:25, 32:13, 35:5, 37:7, 37:9, 37:24, 38:4, 38:16, 38:18, 39:15, 39:17, 41:9
**MINKOW** [3] - 1:6, 4:12, 5:25
**minutes** [1] - 36:23

**misleading** [3] - 20:22, 21:2, 26:25
**Miss** [2] - 40:6, 40:16
**misspeak** [1] - 14:3
**mistake** [1] - 30:2
**mistakes** [1] - 30:2
**mitigate** [2] - 34:21, 34:22
**moment** [1] - 5:1
**months** [1] - 9:5
**more-severe** [1] - 17:4
**morning** [2] - 40:8, 40:13
**mortal** [1] - 27:15
**most** [4] - 3:23, 28:9, 39:21, 41:16
**motion** [6] - 35:16, 35:17, 35:21, 36:1, 36:4
**motions** [1] - 40:4
**MR** [65] - 2:5, 2:9, 2:13, 2:16, 4:16, 4:23, 5:5, 5:6, 5:8, 5:11, 5:16, 5:18, 8:22, 8:23, 9:9, 10:9, 10:20, 13:25, 14:15, 14:16, 18:6, 18:20, 18:24, 19:11, 19:14, 19:19, 19:22, 20:4, 20:10, 20:12, 20:14, 20:17, 21:23, 23:22, 23:24, 26:16, 26:18, 26:20, 27:11, 28:22, 29:11, 29:15, 29:18, 31:13, 31:21, 32:6, 32:9, 34:2, 34:4, 34:11, 34:19, 36:10, 36:12, 36:21, 36:25, 40:10, 40:13, 40:18, 40:22, 40:25, 41:6, 41:25, 42:1, 42:4
**MS** [1] - 2:2
**multiple** [1] - 11:9
**must** [8] - 11:21, 11:24, 12:19, 13:7, 16:11, 23:8, 27:19, 29:3

## N

**N.E** [1] - 1:14
**name** [6] - 2:11, 4:19, 5:23, 15:10, 23:3, 38:17
**nap** [1] - 23:5
**nature** [1] - 38:20
**need** [16] - 2:24, 3:9, 3:17, 3:19, 3:21, 6:25,

9:20, 9:22, 12:25, 17:12, 23:16, 30:21, 31:20, 36:8, 39:24, 41:14
**needed** [1] - 17:23
**negotiate** [1] - 41:18
**news** [1] - 20:21
**next** [2] - 19:5, 36:23
**none** [3] - 16:21, 16:24, 42:1
**nonprescription** [1] - 8:15
**normal** [1] - 8:16
**North** [1] - 40:14
**notes** [2] - 18:8, 36:15
**nothing** [3] - 8:17, 12:10, 35:20
**noticed** [1] - 17:14
**number** [11] - 2:2, 2:25, 9:16, 12:5, 12:8, 12:9, 17:1, 17:24, 24:5, 27:1, 41:1

## O

**o'clock** [1] - 40:19
**O'QUINN** [35] - 1:13, 2:5, 2:9, 4:23, 5:6, 5:8, 8:22, 10:9, 10:20, 13:25, 14:16, 18:6, 18:20, 18:24, 19:14, 20:4, 20:12, 20:14, 20:17, 26:20, 27:11, 28:22, 29:11, 29:15, 29:18, 32:6, 34:4, 34:11, 36:10, 36:25, 40:22, 40:25, 41:6, 41:25, 42:4
**O'Quinn** [9] - 2:5, 2:7, 2:8, 8:19, 10:6, 20:15, 26:14, 26:19, 35:25
**oath** [4] - 3:25, 4:1, 4:3, 24:20
**objection** [1] - 40:23
**objections** [1] - 40:5
**obligations** [1] - 37:7
**obtained** [1] - 32:21
**OF** [4] - 1:1, 1:3, 1:8, 42:11
**off-the-record** [3] - 13:20, 26:15, 32:22
**offense** [12] - 12:4, 12:5, 12:8, 12:9, 18:3, 18:4, 18:16, 18:9, 19:6, 19:24, 26:6, 39:16
**Office** [2] - 39:21, 40:3

office [1] - 28:6
office's [1] - 34:14
Official [2] - 1:22, 42:12
old [1] - 5:25
once [5] - 4:1, 28:3, 34:15, 36:2, 39:23
one [14] - 3:3, 3:4, 6:5, 8:19, 14:10, 15:15, 17:21, 19:2, 20:17, 24:9, 30:21, 33:16, 37:8, 39:8
opportunity [6] - 13:7, 15:25, 18:13, 34:5, 35:11, 41:20
oppose [1] - 18:12
option [1] - 22:17
options [7] - 3:2, 3:3, 8:1, 8:2, 9:13, 38:1
order [3] - 9:25, 29:5, 39:17
ordinarily [2] - 32:17, 33:2
organizations [1] - 20:21
otherwise [1] - 5:17
outline [1] - 10:7
outlined [1] - 34:8
own [1] - 24:8

**P**

p.m [2] - 2:1, 42:6
PAGE [1] - 1:6
page [6] - 13:22, 14:1, 14:5, 14:6, 15:9
pages [1] - 34:25
paid [1] - 27:19
paragraph [32] - 14:2, 14:4, 14:5, 14:7, 14:11, 15:19, 17:24, 17:25, 18:1, 18:7, 18:10, 18:17, 19:3, 19:5, 20:2, 28:25, 29:4, 29:20, 29:24, 31:14, 31:19, 32:2, 32:14, 33:2, 33:19, 33:20, 33:22, 35:11, 35:12, 36:21, 38:24
paragraphs [7] - 15:15, 17:1, 17:21, 31:16, 33:23, 36:20, 37:8
parallel [1] - 9:2
parole [1] - 27:23
part [5] - 19:12, 21:9, 23:17, 24:14, 24:23
participants [1] - 20:21

participate [1] - 10:12
particular [1] - 17:6
particularly [1] - 32:5
parties [2] - 4:14, 17:23
past [2] - 8:10, 9:4
pastor [1] - 7:5
PATRICIA [1] - 1:9
pause [3] - 11:15, 21:25, 36:17
pay [1] - 30:15
paying [1] - 27:16
payment [1] - 24:3
payments [1] - 20:24
penalties [2] - 26:3, 27:18, 38:22
penalty [2] - 4:5, 4:6
pending [2] - 40:23, 41:10
people [2] - 10:17, 41:16
percent [2] - 27:24, 27:25
perhaps [1] - 18:6
perjury [1] - 4:2
permanent [1] - 40:16
person [1] - 39:10
personal [1] - 40:25
personally [1] - 30:22
persuade [1] - 33:1
persuaded [2] - 22:3, 31:11
pertain [1] - 33:23
pertained [1] - 10:19
phone [1] - 29:1
place [1] - 3:25
places [1] - 5:13
plan [5] - 10:11, 10:13, 10:14, 10:15, 32:7
PLEA [1] - 1:8
plea [14] - 2:20, 7:11, 9:6, 17:5, 21:11, 25:15, 28:3, 28:10, 31:10, 37:4, 37:5, 37:16, 38:19, 39:14
Plea [42] - 4:14, 4:24, 5:1, 8:21, 13:19, 13:22, 13:24, 14:1, 14:5, 14:8, 14:18, 15:8, 15:14, 15:15, 15:22, 16:1, 16:3, 16:6, 16:7, 16:19, 16:25, 17:6, 17:11, 17:15, 21:20, 22:3, 22:7, 25:15, 28:25,

29:4, 32:2, 33:19, 34:18, 36:8, 36:9, 36:19, 37:10, 38:24, 39:6, 41:18
plead [14] - 3:1, 8:21, 22:4, 22:7, 22:16, 22:21, 22:23, 25:14, 28:3, 31:12, 37:20, 37:24, 38:10, 39:2
pleading [6] - 25:8, 25:19, 28:2, 36:18, 38:4, 38:21
point [1] - 20:6
points [1] - 12:14
pool [1] - 40:18
position [4] - 20:8, 20:18, 21:16, 40:21
positive [2] - 41:17, 41:20
possess [1] - 28:6
possibility [1] - 25:5
possible [3] - 12:19, 35:20, 38:22
post [1] - 37:3
potential [3] - 17:16, 17:18, 31:17
power [2] - 25:22, 35:25
precipitating [1] - 41:4
precluded [1] - 5:2
precludes [1] - 29:8
prepared [2] - 11:22, 13:5
prescription [1] - 8:14
prescriptions [1] - 8:16
present [4] - 2:14, 4:25, 5:3, 21:7
Presentence [4] - 11:21, 13:4, 13:9, 39:17
pressure [1] - 20:23
presume [4] - 7:20, 13:23, 23:20, 39:10
presumption [3] - 23:2, 23:11, 23:12
pretend [1] - 38:6
prevent [1] - 5:14
prevents [1] - 5:9
prison [1] - 26:1
Probation [2] - 39:21, 40:3
procedure [1] - 13:9
proceeded [1] - 10:9
proceeding [1] - 4:15
PROCEEDINGS [1] - 42:11

proceedings [1] - 33:25
process [3] - 32:9, 32:18, 39:19
produce [2] - 19:9, 19:21
proffer [7] - 14:7, 14:20, 14:24, 15:3, 16:19, 34:9, 38:24
program [1] - 6:16
promise [1] - 22:2
promises [2] - 39:5
property [2] - 32:14, 32:17
pros [1] - 30:8
protections [1] - 24:23
prove [13] - 9:23, 9:24, 10:4, 10:10, 16:11, 23:3, 23:4, 23:7, 23:12, 25:1, 32:19, 32:24
provided [4] - 2:10, 4:24, 18:20, 21:9
provides [3] - 18:2, 33:19, 35:12
providing [1] - 33:24
provision [5] - 17:14, 20:7, 29:20, 31:20, 31:24
provisions [5] - 17:6, 17:13, 29:12, 35:18, 36:18
public [1] - 28:6
pun [1] - 41:14
put [3] - 24:17, 24:22, 41:20

**Q**

qualified [2] - 10:22, 10:23
qualify [1] - 10:24
quality [3] - 34:13, 35:13
quantity [2] - 34:13, 35:14
questions [4] - 2:25, 3:20, 8:4, 41:24
quickly [2] - 23:15
quite [1] - 5:2

**R**

raise [1] - 4:10
range [6] - 12:4, 12:16, 12:19, 13:1, 19:9, 19:20

rather [1] - 22:24
Raymond [1] - 2:10
Re [15] - 4:15, 4:16, 4:24, 5:20, 7:18, 10:5, 14:19, 15:18, 22:10, 23:5, 23:23, 23:24, 30:8, 30:11, 35:21
read [4] - 3:24, 14:7, 15:15, 15:17
ready [1] - 20:15
real [1] - 34:23
realize [2] - 27:15, 33:6
really [2] - 19:24, 20:2
reason [3] - 8:23, 12:24, 25:5
reasonable [7] - 4:4, 10:17, 16:11, 23:4, 23:8, 25:1, 33:1
recently [1] - 8:7
recess [1] - 42:5
recessed [1] - 42:6
recklessly [1] - 35:6
recommendation [2] - 19:2, 33:16
recommendations [11] - 17:2, 17:3, 17:4, 17:7, 17:13, 17:22, 19:5, 20:11, 20:13, 33:18, 36:7
recommending [1] - 21:21
RECORD [1] - 42:10
record [6] - 10:6, 13:20, 15:7, 20:18, 26:15, 32:22
recovering [1] - 4:17
reduce [3] - 35:16, 35:22, 36:2
reduction [1] - 27:25
reductions [2] - 18:3, 18:19
reference [1] - 18:10
referenced [1] - 18:8
referred [2] - 18:5, 20:2
regard [1] - 3:9
regarding [1] - 7:23
reject [1] - 17:4
related [1] - 21:7
relates [1] - 21:1
relationship [2] - 5:20, 22:13
relationships [1] - 20:20
release [2] - 25:24, 26:1
reliance [1] - 10:18
Religion [1] - 6:16

**religiously** [1] - 41:14
**reluctant** [1] - 24:12
**rely** [7] - 3:8, 3:24, 10:17, 13:16, 15:3, 16:17, 31:22
**remain** [2] - 9:19, 41:10
**remaining** [1] - 40:23
**remand** [1] - 40:21
**remember** [1] - 15:13
**reminded** [1] - 33:16
**Report** [4] - 11:21, 13:5, 13:9, 39:18
**report** [4] - 39:23, 39:24, 39:25, 40:1
**REPORTED** [1] - 1:22
**Reporter** [2] - 1:22, 42:12
**reporter** [1] - 2:11
**represent** [2] - 16:3, 24:1
**representation** [1] - 22:9
**requested** [2] - 34:1, 36:5
**require** [1] - 21:7
**requirements** [1] - 21:13
**reservation** [1] - 16:20
**reserve** [3] - 19:23, 20:3, 21:18
**resolved** [1] - 19:3
**respect** [1] - 34:19
**responsibility** [2] - 12:13, 19:4
**rest** [1] - 27:15
**restitution** [17] - 17:14, 17:16, 17:19, 21:19, 26:7, 26:8, 26:11, 26:14, 26:21, 27:1, 27:2, 27:7, 27:11, 29:5, 37:17, 38:7
**restorative** [1] - 26:25
**result** [2] - 32:4, 39:4
**resulting** [1] - 26:5
**return** [1] - 25:2
**revelation** [1] - 26:24
**review** [1] - 34:14
**reviewed** [2] - 4:24, 17:1
**rights** [12] - 19:23, 23:17, 24:6, 24:14, 25:16, 31:6, 31:7, 31:9, 37:13, 37:16, 38:22

**role** [3] - 12:9, 19:23, 34:1
**Room** [1] - 1:24
**RPR** [1] - 1:22
**Rule** [2] - 31:17, 35:17
**run** [1] - 4:5
**RYAN** [1] - 1:13
**Ryan** [1] - 2:5

### S

**S.E** [1] - 1:17
**S/DAVID** [1] - 42:12
**saint** [1] - 41:21
**sale** [1] - 10:19
**San** [1] - 7:8
**satisfaction** [1] - 8:5
**satisfactory** [2] - 4:21, 7:17
**satisfied** [5] - 2:25, 22:9, 22:11, 39:9, 39:13
**satisfies** [1] - 38:25
**satisfy** [1] - 21:8
**saw** [2] - 5:4, 32:2
**scenario** [1] - 27:10
**scheme** [1] - 10:21
**Science** [2] - 6:1, 6:20
**scoring** [1] - 19:17
**seat** [2] - 2:18, 4:13
**secret** [1] - 40:20
**Section** [1] - 12:21
**securities** [10] - 2:21, 10:2, 10:8, 10:16, 10:19, 10:21, 10:24, 38:12, 41:1
**security** [2] - 10:22, 10:23
**see** [12] - 2:15, 2:16, 4:15, 11:4, 11:8, 15:9, 16:13, 17:1, 24:6, 31:19, 39:25, 42:2
**seeing** [1] - 16:16
**seek** [3] - 17:25, 18:2, 18:18
**seeking** [1] - 19:14
**SEITZ** [1] - 1:9
**Seminary** [1] - 6:4
**send** [1] - 24:13
**senior** [1] - 7:5
**sense** [3] - 8:24, 9:8, 9:17
**sentence** [29] - 11:19, 11:20, 11:24, 13:1, 13:11, 13:17, 16:18, 17:4, 18:8, 19:10, 19:15, 19:21,

27:24, 28:11, 28:15, 29:5, 29:8, 29:21, 31:2, 31:4, 31:8, 35:16, 35:22, 36:2, 37:14, 37:19, 41:11
**sentencing** [17] - 4:20, 12:3, 12:21, 13:5, 20:3, 21:6, 21:14, 27:19, 32:11, 35:17, 40:5, 40:6, 40:23, 41:12, 41:14, 41:23
**Sentencing** [4] - 11:16, 11:25, 12:20, 16:15
**sequentially** [1] - 4:6
**serve** [2] - 27:24, 28:6
**set** [1] - 38:24
**severe** [2] - 17:4, 19:21
**shame** [2] - 34:15, 34:16
**share** [1] - 35:24
**shared** [4] - 10:11, 10:12, 10:13, 10:15
**short** [1] - 37:2
**show** [3] - 9:25, 10:18, 41:14
**sign** [4] - 4:18, 4:19, 33:9, 33:10
**signature** [4] - 4:15, 15:10, 15:11
**signed** [4] - 5:1, 5:4, 14:18, 15:14
**significant** [3] - 21:7, 35:7, 41:9
**significantly** [1] - 19:9
**signing** [1] - 16:6
**simple** [1] - 29:21
**simply** [1] - 6:7
**single** [2] - 14:13, 39:1
**single-spaced** [1] - 14:13
**situation** [2] - 5:8, 11:11
**smoke** [1] - 41:19
**sole** [1] - 35:13, 35:14
**solely** [1] - 23:6
**sophisticated** [1] - 20:9
**sorry** [1] - 28:22
**soul** [1] - 6:25
**sounds** [1] - 19:8
**SOUTHERN** [1] - 1:1
**Southern** [2] - 6:3, 9:4

**spaced** [1] - 14:13
**Special** [1] - 2:9
**special** [4] - 12:11, 27:19, 27:21, 41:1
**specific** [4] - 12:5, 18:3, 18:10, 18:18
**specifically** [3] - 18:5, 18:8, 18:20
**spelling** [1] - 2:11
**spending** [1] - 27:15
**spent** [3] - 7:25, 8:25, 9:5
**stamped** [1] - 34:25
**stand** [2] - 4:10, 38:16
**standard** [1] - 32:25
**start** [1] - 39:18
**state** [4] - 2:4, 5:23, 9:3, 29:10
**statement** [1] - 10:17
**statements** [5] - 4:3, 13:8, 20:22, 21:2, 26:24
**STATES** [3] - 1:1, 1:3, 1:9
**States** [13] - 1:13, 2:2, 2:6, 8:22, 10:10, 12:21, 18:11, 18:15, 19:14, 21:5, 28:5, 40:22, 41:25
**States'** [1] - 21:15
**statutory** [2] - 12:20, 19:22
**stepped** [1] - 7:10
**still** [5] - 19:23, 31:12, 33:1, 37:4, 37:19
**stock** [4] - 10:23, 21:4, 26:22, 27:1
**stop** [1] - 3:20
**Street** [2] - 1:14, 1:17
**subject** [2] - 6:15, 34:13
**subparagraphs** [3] - 14:10, 14:13, 14:17
**substance** [2] - 41:3, 41:6
**substantial** [5] - 21:13, 27:2, 34:7, 34:23, 35:15
**subtractions** [1] - 14:23
**succeed** [1] - 10:3
**sufficient** [1] - 7:25
**suggested** [1] - 13:14
**suggests** [1] - 26:19
**Suite** [1] - 1:18
**supervised** [2] - 25:24, 26:1

**support** [3] - 11:4, 34:25, 35:3
**surety** [1] - 40:25
**swear** [1] - 4:11
**sworn** [1] - 4:12
**system** [1] - 27:22

### T

**T's** [1] - 31:23
**table** [1] - 2:9
**technically** [1] - 18:25
**term** [1] - 19:6, 25:22, 25:23, 25:24, 27:23
**terms** [10] - 15:22, 16:1, 16:7, 25:25, 29:16, 34:22, 37:6, 37:9, 41:13, 41:20
**testify** [6] - 24:9, 24:10, 24:11, 24:12, 24:17, 24:21
**testimony** [1] - 33:25
**THAT** [1] - 42:10
**THE** [101] - 1:9, 1:12, 1:15, 2:7, 2:12, 2:15, 2:17, 2:23, 2:24, 3:6, 3:7, 3:12, 3:13, 3:16, 3:17, 3:22, 3:23, 4:9, 4:10, 4:13, 4:21, 5:4, 5:7, 5:10, 5:14, 5:17, 5:19, 5:21, 5:22, 8:19, 8:24, 9:8, 9:10, 9:11, 10:6, 10:15, 10:25, 13:23, 14:3, 14:13, 17:11, 17:23, 18:17, 18:23, 19:1, 19:12, 19:16, 19:20, 20:6, 20:11, 20:13, 20:15, 21:22, 21:24, 22:1, 23:20, 23:23, 26:14, 26:17, 27:4, 27:6, 27:10, 27:14, 29:1, 29:10, 29:14, 29:16, 31:18, 31:22, 32:1, 32:7, 32:12, 33:20, 34:3, 34:8, 34:15, 35:9, 36:7, 36:11, 36:13, 36:22, 37:6, 37:11, 37:12, 38:9, 38:14, 38:15, 38:17, 38:18, 40:9, 40:11, 40:15, 40:19, 40:24, 41:3, 41:8, 42:2, 42:5, 42:10, 42:11
**therefore** [1] - 39:13
**thereof** [1] - 37:10
**thoroughly** [1] - 9:12

thoughtfully [2] - 3:1, 37:25
thousands [1] - 34:24
threatened [1] - 22:6
threats [1] - 39:5
three [5] - 5:13, 12:13, 25:25
timely [1] - 40:4
title [1] - 32:3
Title [3] - 10:20, 10:24, 12:21
TO [1] - 1:6
today [8] - 2:19, 2:22, 4:8, 9:6, 11:20, 22:20, 37:2, 39:19
tooth [1] - 39:25
top [1] - 27:18
Tower [1] - 1:18
trading [1] - 41:2
TRANSCRIPT [1] - 42:10
travel [1] - 5:2
treated [1] - 8:7
treatment [1] - 5:11
trial [20] - 10:10, 22:17, 22:24, 23:1, 23:17, 23:25, 24:2, 24:5, 24:14, 24:23, 25:4, 25:16, 25:17, 31:6, 31:7, 32:19, 33:3, 36:24, 37:13, 37:14
trials [1] - 34:1
true [2] - 9:8, 15:3
trust [1] - 20:8
truth [2] - 4:2, 4:7
truthful [1] - 33:24
try [2] - 26:23, 38:7
trying [2] - 24:18, 38:5
turn [2] - 32:14, 33:10
turned [1] - 34:24
turning [2] - 14:5, 35:3
twice [2] - 26:5, 34:16
two [7] - 3:20, 5:13, 10:11, 20:7, 20:8, 29:12, 39:8
two-level [2] - 20:7, 20:8
type [5] - 7:4, 7:12, 7:14, 11:1, 12:7
typed [1] - 15:10
types [1] - 9:24
typographical [1] - 40:1

**U**

U.S [2] - 7:3, 24:13
ultimate [1] - 27:1
ultimately [1] - 13:11
unaware [1] - 34:20
under [14] - 3:25, 4:1, 4:2, 10:24, 12:20, 12:21, 23:8, 25:9, 26:11, 28:14, 29:9, 30:5, 33:6, 41:16
undercover [1] - 34:1
underlying [1] - 34:20
understood [1] - 10:1
unearned [2] - 6:2, 6:6
unfortunately [1] - 15:5
unhappy [1] - 28:10
uninterrupted [1] - 3:20
UNITED [3] - 1:1, 1:3, 1:9
United [14] - 1:13, 2:2, 2:6, 8:22, 10:10, 12:21, 18:11, 18:15, 19:14, 21:5, 21:15, 28:5, 40:22, 41:25
University [4] - 6:10, 6:11, 6:19, 6:21
unlawful [4] - 10:11, 10:13, 10:15
unless [1] - 36:23
up [13] - 12:8, 12:10, 25:4, 25:5, 25:6, 25:8, 25:16, 25:23, 33:2, 33:5, 33:7, 41:14, 41:19
upward [2] - 12:19, 29:23

**V**

value [3] - 21:3, 26:22, 26:25
variance [4] - 18:1, 18:12, 18:13, 18:16
variances [2] - 18:3, 18:19
verdicts [1] - 25:2
versus [1] - 2:3
Versus [1] - 1:5
vibrate [1] - 29:2
victim [1] - 38:8
victimization [1] - 26:21
victimized [1] - 21:9
violated [1] - 25:25
Virginia [1] - 6:12
VOLUME [1] - 1:5
voluntarily [4] - 3:4, 31:12, 38:2, 39:3
vote [1] - 28:6

**W**

waive [2] - 30:22, 31:3
waived [2] - 28:17
waiver [5] - 28:21, 29:12, 29:19, 30:6, 37:18
waiving [2] - 30:9, 31:12
walk [1] - 23:9
wants [2] - 4:18, 36:24
warrants [1] - 41:16
waste [1] - 23:14
weaknesses [2] - 11:8, 16:13
WEBB [1] - 2:2
Webb [2] - 40:6, 40:16
week [1] - 7:10
weeks [1] - 5:13
weight [1] - 32:25
whispering [1] - 28:23
wife [1] - 15:16
Wilkie [1] - 1:23
willingly [1] - 37:22
wise [1] - 6:24
wish [1] - 16:24
withdraw [2] - 17:5, 28:10
withdrawal [1] - 37:3
withdraws [1] - 36:23
witness [1] - 24:8
witnesses [5] - 9:25, 24:7, 24:11, 24:13
works [1] - 23:13
worst [1] - 27:10
worst-case [1] - 27:10
written [4] - 4:14, 15:8, 25:15, 39:5

**Y**

year [1] - 19:15
years [11] - 5:25, 7:6,

7:9, 19:7, 19:21, 25:23, 25:25, 30:18, 31:8, 37:15
yellow [1] - 41:22
yesterday [1] - 37:2
yourself [3] - 11:11, 25:10, 41:21