# ASSIGNMENT AND RELEASE

Reference is hereby made to the unsigned Co-Production Agreement (the "Agreement") dated as of August 10, 2009, between www.DegreeFraud.com, LLC ("Owner") and IMG Film, Inc. ("Producer") in connection with the feature length motion picture tentatively entitled "Minkow" (the "Picture") based on the life story (the "Life Story") of Barry Minkow ("B. Minkow") and the book by B. Minkow entitled "Cleaning Up" (the "Book"). A copy of the Agreement is attached hereto as Exhibit "A". Owner and Producer shall sometimes be collectively referred to herein as the "Parties" or each individually as a "Party".

Now, therefore, in consideration of the mutual promises, covenants and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties desire to, and hereby do, enter into this Assignment and Release ("Release") as of August 16, 2010 on the following terms and conditions:

1. (a) Reference is made to the following facts:

    [1] Notwithstanding the terms set forth in the Agreement, Owner provided production financing for the Picture in the amount of approximately Two Million Five Hundred Thousand Dollars ($2,500,000.00).

    [2] It was the intention of Owner and Producer to form and co-own IMG Film 14, Inc. (the "Production Entity") in the following percentages: Twenty-Five Percent (25%) of One Hundred Percent (100%) is owned by Producer and Seventy-Five Percent (75%) of One Hundred Percent (100%) is owned by Owner.

    [3] All rights to the Life Story, including any and all feature film exploitation rights thereof and all rights in and to the Book, and a previously drafted screenplay by Ethan Gross with revisions by Dan Kagan have been assigned to the Production Entity from B. Minkow and Restitution, LLC ("Restitution") via the following documents:

    (i) Life Rights Agreement between B. Minkow and Production Entity dated August 5, 2009;

    (ii) Book Option and Acquisition Agreement between B. Minkow and Production Entity dated August 5, 2009; and

    (iii) Screenplay Assignment between Restitution and Production Entity dated August 6, 2009.

    [4] Producer provided production services on the Picture. Such services included, without limitation, entering into agreements on behalf of the Production Entity with all above-the-line and below-the-line personnel rendering services on the Picture. Such agreements include the right to exploit the Picture and the results and proceeds of such services in any and all media now known or hereafter devised in perpetuity throughout the universe.

2. Contingent Compensation:

    (a) Upon condition that Producer fully performs all Services (as such term is defined in the Agreement) and obligations set forth in the Agreement and Producer is not in breach or

1

default of the Agreement or this Release, Producer shall be entitled to receive an amount equal to non-diluted Twenty-Five Percent (25%) of One Hundred Percent (100%) of the share of so-called "back end" contingent compensation that is received by Owner after deduction of the amount of all deferments and other participations in such contingent compensation payable to third parties (as set forth in the Agreement). "Contingent compensation" shall be defined, accounted for and paid pursuant to a definition to be negotiated by the parties in good faith within industry standards applicable to pictures of similar budgets, which shall include, without limitation, deduction of (a) distribution fees payable to third party distributors or sales agents (no distribution fee or override to Owner itself); (b) distribution expenses; (c) development and production costs of the Picture including interest thereon at the rate of two percentage points above the prime rate of interest charged from time to time by Bank of America as of the end of the applicable accounting period; (d) deferred fees payable to persons furnishing goods and services for the Picture, including but not limited to a deferred production fee to Owner in the amount of Zero Dollars ($0) and a deferred performing fee to B. Minkow in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00), as set forth in Exhibit D of the Agreement; and (e) the amount of participations payable to third parties, which shall not depreciate Producer's Twenty-Five Percent (25%) share.

(b) The foregoing contingent compensation and any payments made to Producer pursuant to the Agreement (collectively referred to herein as the "Fees") shall constitute payment in full for any and all services rendered by Producer in connection with the Picture. The Fees payable to Producer as set forth above will be in respect of any and all uses of the Picture by Owner or any assignee of Owner in any and all media, whether now known or subsequently developed, in perpetuity throughout the universe, in all versions in all languages for any and all purposes.

3. <u>Transfer of Rights</u>: In consideration of the Fees to be paid to Producer pursuant to Paragraph 2 above, Producer and Production Entity hereby agree to assign any and all rights in and to the Picture, the Life Story and the Book to Owner. For the avoidance of doubt, Producer and Production Entity hereby agree to assign to Owner all of Producer's or Production Entity's rights in and to the Picture and the underlying rights thereto and the results and proceeds of any and all services rendered on the Picture by Producer, Production Entity and any and all above-the-line and below-the-line personnel.

4. <u>Rights</u>: Producer represents and warrants that they have not and will not take any action that materially interferes with the full exercise by Owner of the rights granted to Owner pursuant to this Release. Additionally, Producer hereby confirms that all rights granted to Owner pursuant to this Release are fully vested with Owner. Furthermore, Producer hereby agrees to execute any and all further customary documents consistent herewith reasonably required by Owner to effectuate: (1) the transfer of rights and ownership as set forth in Paragraph 3 above; or (2) the sale and/or distribution of the Picture. Producer's failure to execute any such documents shall be deemed a material breach of this Release.

5. <u>Miscellaneous</u>:

(a) <u>Full Integration</u>: This Release is the final written expression and the complete and exclusive statement of all of the agreements, conditions, promises, representations and covenants between the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, negotiations, representations, understandings and discussions between and among the Parties, their respective representatives and any other person or entity with respect to such subject matter.

2

(b) <u>No Oral Modification</u>: Any amendment, waiver, modification or supplementation of any provision of this Release must be in writing, must specifically refer to this Release and must be signed by a duly authorized representative of each Party to be bound.

(c) <u>Representations and Warranties</u>: Each Party represents, warrants and agrees that: (i) they have to the extent they desire discussed all aspects of this Release with their respective attorney; (ii) they have carefully read and fully understand all of the provisions of this Release; (iii) they are voluntarily entering into this Release; and (iv) they have full authority to enter into this Release.

(d) <u>Successors</u>: This Release shall be binding upon, and shall inure to the benefit of, each Party hereto and each of their respective heirs, successors, legal representatives and assignees.

(e) <u>Severability</u>: If any portion or provision of this Release is found to be invalid, void, voidable, unlawful or for any reason unenforceable, that portion or provision may be severed from this Release, and this Release shall otherwise remain in full force and effect and be construed as if such portion or provision had not been included herein.

(f) <u>Governing Law; Venue; Jurisdiction</u>: This Release shall be construed and governed under the laws of the state of California. The Parties hereby agree that any and all claims or actions that might arise in any way in connection with or out of this Release shall be brought only in the state of California and the Parties hereby expressly waive any objection they would otherwise have to venue or jurisdiction in said courts.

(g) <u>Confidentiality/Non-Disparagement</u>: The terms of this Release are to be kept strictly confidential by the Parties hereto and their respective agents, servants and employees. The Parties agree that they will not use or disclose any confidential, financial, investor or proprietary information relating to this Release, the Property, the Pilot or the Series. The Parties will not make any statement, public address, broadcast, media release or other media publication relating to this Release or the terms hereof, except to state that the Parties amicably parted ways and mutually decided to end their employment arrangement to the mutual satisfaction of all Parties. Notwithstanding the three previous sentences, the terms and existence of this Release may be communicated by each party hereto to their respective management, attorneys, accountants, lenders and potential lenders, parent and subsidiary companies, and bondholders and trustees and/or when and as required by law, pursuant to subpoena or other court order or demand by a government agency (including, without limitation, the Internal Revenue Service, the Franchise Tax Board, the Department of Justice, and the Federal Communications Commission). The disclosure by any party hereto of the existence of this Release shall not breach the provisions of this Subparagraph 5(g). In addition, any Party may state that the matters relating to Grantor and/or Author in connection with the Property, the Pilot and Series have been settled or resolved. A breach of this Subparagraph 5(g) will be deemed a material breach of this Release.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

The Parties hereby agree that this Release and may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute the Release.

IN WITNESS WHEREOF, this Release has been duly executed by each of the undersigned as of the date set forth above.

WWW.DEGREEFRAUD.COM, LLC

By: *[signature]*

Its: MANAGING PARTNER

Date: 9/28/2010

IMG FILM, INC.

By: *[signature]*

Its: Partner

Date: 9/26/10

IMG FILM 14, INC.

By: *[signature]*

Its: Partner

Date: 9/26/10

4

Exhibit "A"

CO-PRODUCTION AGREEMENT