UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20209-CR-SEITZ

UNITED STATES OF AMERICA,

v.

BARRY MINKOW,

    Defendant.
_____/

**UNITED STATES' RESPONSE TO DEFENDANT BARRY MINKOW'S
MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant United States Attorney, files this Response in Opposition to defendant Barry Minkow's Objections to the Presentence Investigation Report and Request for Alternative Sentence (Docket Entry No. 17)("Objections"). The United States opposes any departure or variance and respectfully requests that the defendant be sentenced to 60 months' imprisonment.

The facts in this case are undisputed. Between January 2009 and March 2009, Minkow conspired to commit securities fraud. The target of his scheme was Lennar Corporation ("Lennar") and the result of his fraud was a loss of over $400,000,000, estimated to be approximately $583,573,600, in artificial diminution of the equity securities and other corporate assets of Lennar.

Minkow is a previously convicted securities fraudster. At the age of 21 years old, he was convicted of multiple counts of securities and mail fraud in a federal case in New York. (PSR ¶ 47.) Notwithstanding the seriousness and scope of the charge he pled guilty to, and the significant concessions he has received, Minkow seeks a further reduced sentence. (Objections at 11, 24-25.)[1]

---

[1] The Objections do not make specific reference to what the "alternative sentence" should be.

The defendant has received significant benefits – even before the advisory guideline range is calculated. He was charged by Information and given the privilege of surrender. The United States agreed to limit the defendant's exposure to 60 months' imprisonment as a result of an agreement to charge him with one count of violating Title 18, United States Code, Section 371. (Information, Docket Entry No. 1.) As the PSR correctly points out, the guideline range for this matter is between 210 months and 262 months. (PSR ¶ 102.) Given the count of conviction, the guideline sentence becomes the statutorily authorized term of imprisonment, or 60 months. (*Id.*)

## **REQUESTS FOR DEPARTURES FROM THE GUIDELINES**

Defendant argues for a departure based on medical issues as well as a general departure because he has not received credit for acceptance of responsibility. (Objections at 6.) Neither argument has merit.

First, defendant requests a departure based on medical circumstances. According to his objections, "Minkow suffers from a variety of serious health conditions which may be exacerbated by a term of imprisonment...." (Objection at 7.) The pleading identifies ADHD and migraines as serious health conditions that warrant a departure. (*Id.* at 7-8.) Defendant has not identified a comparable case in which a district court granted a departure based on these conditions. As the relevant guideline clearly states: "[p]hysical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from typical cases covered by the guidelines." Section 5H1.4. Counsel cites cases where a defendant was suffering from cancer and heart disease. (Objections at 9.) Counsel concedes that Minkow is not suffering from a life-threatening illness, but requests a

departure based on Section 5H1.4. The defendant is clearly unable to meet the narrowly circumscribed standards for a departure based on physical condition. *See, e.g. United States v. McKinney*, 53 F.3d 664, 677-78 (5th Cir. 1995)(upholding district court's denial of departure based on fifty-two year old defendant's heart problems and high blood pressure); *United States v. LeBlanc*, 24 F.3d 340, 348-49 (1st Cir. 1994). He is a 45 year-old man who is basically healthy, but requires continuing treatment for ADHD, migraines, high blood pressure and other medical conditions. All of these conditions are treatable and manageable by the Bureau of Prisons' medical staff.

Second, defendant argues that he did not receive full credit for acceptance and responsibility because of the way that the guidelines are calculated in this matter. (Objections at 9-10.) It is undisputed that the PSR gave Minkow credit for acceptance of responsibility in its calculation of the guidelines. (PSR ¶¶ 43-45.) Under Section 5K2.0, Minkow argues, he is entitled to a departure based on these grounds. This argument ignores the fact that Minkow received a substantial benefit as part of his offer to plead guilty, a conspiracy count with a five-year maximum sentence in return for his acceptance of responsibility. Given the concession made by the government in return for his agreement to plead guilty and be charged by information, a departure is not warranted.[2]

## RESTITUTION

Defendant challenges the restitution amount in the PSR. (Objections at 3.) The amount of restitution owed is the same amount that Minkow agreed to in litigation in Florida state court. (A true and correct copy of Florida Judgment against Minkow is attached as Exhibit A to this

---

[2] In addition, the case cited by Minkow in his brief does not hold that a departure under Section 5K2.0 was warranted; instead, it vacated the sentence based on the district court's erroneous determination that it did not have the authority to depart under Section 5K2.0. *See United States v. Rodriguez*, 64 F.3d 638, 641 (11th Cir. 1995).

3

memorandum). Though restitution is a criminal remedy, not a civil remedy, the Court has the authority to consider the Florida Judgment in fashioning any criminal restitution remedy. *United States v. Hairston*, 888 F.2d 1349, 1355 (11th Cir. 1989). In *Hairston*, the Court credited payments made towards a civil judgment to the victims in satisfaction of the criminal restitution order. *Id.*

Beyond the fact that Minkow has already agreed in civil proceedings that the $583,573,600 is the proper amount of damages to Lennar,[3] the defendant has put forth no evidence to contradict the restitution amount in the PSR. "In determining the proper amount of restitution, the district court may consider hearsay evidence that bears minimal indicia of reliability so long as the defendant is given an opportunity to refute that evidence." *United States v. Kalaycioglu*, 210 Fed. Appx. 825, 2006 WL 362874 (11th Cir. Dec. 11, 2006)(internal quotations and citations omitted). An appellate challenge to the restitution amount will be upheld only if the defendant can show (1) that the evidence is materially false and (2) that it actually served as a basis for the sentence. *Kalaycioglu*, 210 Fed. Appx. at 834-35. Defendant cannot challenge the detailed analysis provided by the victim in this case. Nor can he show that there are any materially false statements contained in the documents put forth by Lennar in support of its restitution figure. Therefore, a restitution order in the amount of $583,573,600 should be entered against Minkow as part of the Judgment in this matter, though the United States respectfully suggests that any restitution order should credit any payments made by Minkow towards the satisfaction of the Florida civil judgment.

---

[3] Restitution should be ordered "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *United States v. Battista*, 575 F.3d 226, 231 (2d Cir. 2009). Thus, if Lennar's stated loss is $583,573,600, that is the outer limit of what the Court can order in restitution. *See Battista*, 575 F.3d at 231.

## CONSIDERATIONS REGARDING SENTENCING AND ARGUMENTS IN OPPOSITION TO A REQUEST FOR A VARIANCE

The United States recognizes, of course, that the Sentencing Guidelines are now advisory, *United States v. Booker*, 543 U.S. 220, 245 (2005), and that "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [§ ] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). Nonetheless, even after *Booker*, the advisory Sentencing Guidelines remain an important (and mandatory) consideration. Indeed, the Eleventh Circuit has emphasized that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *United States v. Scott*, 426 F.3d 1324, 1330 (11th Cir. 2005) (*quoting Booker*, 125 S.Ct. at 767); *Gall v. United States*, 128 S.Ct. 586 (2007)(reiterating the proper procedures for district courts' sentencing decisions and explaining that, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." The sentencing court then should "consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.") The United States Supreme Court has further explained that while the Guidelines are a "starting point and the initial benchmark" which "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives," *Kimbrough*, 128 S.Ct. 558, 574 (2007), courts should look beyond the guidelines to craft an individualized sentence based on the facts presented in each case using the 3553(a) factors. *Id*.

The Eleventh Circuit, in its *en banc* opinion, *United States v. Irey*, 612 F.3d 1160, 1196-98 (11th Cir. 2010), described the oft-quoted but misinterpreted 'parsimony principle.' *Id.* at 1196-97. As the majority opinion in *Irey* wrote, the principle is meant to describe the statutory requirement that "a sentence be sufficient, but not greater than necessary, to comply with the purposes set forth

in paragraph (2) [of Section 3553(a)(2)]." *Id.* at 1196.  Any sentence imposed by this Court should be serious enough to reflect the nature and characteristics of the offense, the seriousness of the offense, general and specific deterrence, and the harm to the victims and the public.  Sixty months' imprisonment is a reasonable sentence for Minkow.

## THE DEFENDANT AND HIS CRIMES

This is the second time this defendant finds himself convicted of securities fraud.  The mitigating factor as to his first conviction is that he was a young man of twenty when he first went awry of the securities laws; the aggravating factors as to his second conviction are that he abused his relationship with law enforcement to commit the crime, all the while professing to be a senior pastor at Community Bible Church in California.

Defendant argues that his previous cooperation with different law enforcement and regulatory agencies demonstrates that "defendant will transgress no more and will respond to rehabilitative efforts and not deem himself at war with society." (Objections at 19; *citing Roberts v. United States*, 445 U.S. 552, 558 (1980)).  Minkow abused his position as a confidential human source and his purported work uncovering fraud to put himself in the position to commit a new federal crime.[4]

Moreover, while portraying himself as a fraud fighter, the defendant was shorting the stock of a number of companies where he was purportedly discovering fraud.  (PSR ¶ 84.)  In order to avoid detection, Minkow engaged in the short selling through nominee trading accounts.  (*Id.*)  Defendant argues, in support of his argument for a variance, that he "made mistakes along the way"

---

[4] An abuse of trust enhancement was applied to Minkow based in part on this conduct. (PSR ¶ 39.)

and that shorting stock of other companies was a way of uncovering frauds at other companies. (Objections at 18.)  In addition, according to the pleading, Minkow consulted with a civil attorney in California who advised him that this shorting was perfectly legal.  Notwithstanding, Minkow concedes "it should probably not have occurred." (*Id.*)  Shorting stock in this way was yet another way in which Minkow profited in the market, at the same time he purported to be working to uncover fraud through Fraud Discovery Institute.

Minkow, of course, had another vocation between 1997 and the date of his change of plea hearing, as pastor of the Community Bible Church in San Diego, California.  While his role as pastor did not have anything to do with the commission of the offense charged, it is an important fact to consider as it reflects on who Minow truly is.  At the same time he is purportedly offering comfort and guidance to church members, he is working to defraud the securities market and companies of money.  Minkow has built a life on appearing to be giving person, while working to illegally enrich himself.  In this way, other individuals, including his family, religious community and the investing public have been deceived and defrauded by his selfish, immoral and illegal behavior.  Based on the scope and seriousness of the crime committed, as well as the personal characteristics of the defendant, a sentence of 60 months' imprisonment is reasonable.

## FAMILY CONSIDERATIONS

The defendant also argues that family responsibilities justify a variance from the sentencing guidelines due in part to the fact that he is the father to young twins. (Objections at 21.)  Departures on the grounds of family ties are discouraged under Title 28, United States Code, Section 994(e) and under Sentencing Guideline Section 5H1.6.  Defendant's situation is not out of the ordinary – where one parent has to serve time in prison, the other parent and children undoubtably suffer.  *See United*

*States v. Allen*, 87 F.3d1224, 1225-26 (11th Cir. 1996)(reversing family circumstances grounds for downward departure for defendant who was primary caretaker of father afflicted with Alzheimer's and Parkinson's diseases); *United States v. Monaco*, 23 F.3d 793, 801 (3d Cir. 1994)("Because leaving children behind while in prison is a hardship common to many convicted parents, courts refuse to allow downward departures.")  Therefore, family circumstances is not a ground for a variance.

## CONSIDERATIONS REGARDING DETERRENCE

Specific deterrence is particularly important in this case. Minkow was previously convicted of securities fraud. He will stand before the court for sentencing with a second conviction for securities fraud, aggravated by the fact that he abused his relationship with law enforcement to bring about this fraud. General deterrence should also be considered. Others in the community have to be aware that this type of deliberate, callous and extortionate behavior in the securities market is unacceptable. Minkow made false and misleading representations through internet website communications, press releases, videos and other methods of mass publication regarding a public company's financial condition, business structure and management. (Plea Agreement ¶ 16.) The damage inflicted by Minkow continued as he sought out even more publicity for his campaign against Lennar, going to 60 Minutes and others, which further depressed the value of Lennar stock. (*Id.*) As if that was not enough, Minkow then misappropriated non-public information in order to trade Lennar securities for his personal gain. (*Id.*) Both specific and general deterrence require a 60 month sentence.

**CONCLUSION**

The United States respectfully requests that the defendant be sentenced to 60 months' imprisonment.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:   /s Cristina Pérez Soto
      A. CRISTINA PEREZ SOTO
      Assistant United States Attorney
      District Court No. A5501166
      99 N.E. 4th Street
      Miami, Florida 33132-2111
      Tel: (305) 961-9122
      Fax: (305) 530-6168
      Cristina.Soto@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

s/ Cristina Pérez Soto
Cristina Pérez Soto
Assistant United States Attorney